STATE, Respondent, *v.* O'BRIEN, Appellant.

(No. 2,400.)

(Submitted May 20, 1907. Decided June 17, 1907.)

[90 Pac. 514.]

*Criminal Law—Local Option—Appeal—Justices of the Peace— Jurisdiction—Pleadings—Complaint—Special Counsel—Evidence—Elections—Witnesses—Informers—Variance—Instructions—New Trial—Newly Discovered Evidence—Misconduct of Jury.*

Appeal—Justices' Courts—Record—Correction—Power of District Court.
1. The district court properly refused to correct the transcript of a justice of the peace, brought to it on appeal; if it did not speak according to the facts, the court should, upon a proper showing, direct the justice to make the correction.

Justices' Court—Appeal—Waiver of Irregularities.
2. Since the district court does not, on appeal from a justice's court, sit as a court of review, but tries the case *de novo*, any irregularities attending the rendition of the judgment in a case in which the justice had jurisdiction of the offense charged and of the defendant are waived by taking the appeal.

Violation of Local Option Law—Complaint—Sufficiency.

    3.  A complaint charging one under the local option law (Chapter X, Title VII, Part III, of the Political Code) with having willfully and unlawfully sold spirituous and intoxicating liquor to a person named, contrary to the provisions of the above law, "said law having become operative in said county on January 7, 1904, by reason of an election previously held therein as provided in said Chapter," etc., was sufficient to meet all the requirements of sections 1841 and 2680 of the Penal Code, and a demurrer interposed on the ground that the complaint did not allege that all the steps necessary to make the statute operative were taken, was properly overruled.

Justices of the Peace—Jurisdiction—Townships.

    4.  Under section 68 of the Code of Civil Procedure, a justice of the peace elected in one township had jurisdiction of an offense against the local option law committed in another township, in the same county.

Same—Jurisdiction—Constitution.

    5.  *Held,* that the word "district," in section 16, Article III of the Constitution, which declares that in criminal prosecutions the accused shall be tried by a jury from the "county or district in which the offense is alleged to have been committed," is not synonymous with the term "township," but means the precise portion of the territory or political division of the state over which a court may exercise power in criminal matters.

Trial—Special Counsel for Prosecution—Power of District Courts.

    6.  Where nothing appeared to show misconduct on the part of special counsel appointed by the district judge, on his own motion, to assist the county attorney in the prosecution of one charged with violating the local option law, and in the absence of an objection by the prosecuting officer, there was no error in the order of appointment.

Special Counsel—Power of County Commissioners.

    7.  *Quaere:*  Has a board of county commissioners power to employ special counsel in criminal cases at the expense of the county?

Same—District Courts—Discretion.

    8.  *Obiter:*  When the interests of the state demand that the county attorney have assistance in the prosecution of crime, it is within the discretion of the court not only to appoint special counsel, but to permit counsel employed by private parties, or even volunteers, to appear for that purpose.

Local Option Law—Evidence of Other Violations than One Charged.

    9.  While, under the general rule, it is not competent to introduce evidence of other crimes than the one charged against defendant, yet, where, in a case involving a violation of the local option law, sales of intoxicating liquor were shown to have been made to the companion of the prosecuting witness, as well as to the latter, both of which sales constituted virtually the same transaction, the one immediately following the other, there was no error in admitting evidence, tending to show who made the first purchase, especially where the court, on the submission of the case to the jury, gave an instruction that defendant was not on trial for selling liquor to the public, but only for the sale to the prosecuting witness and none other, and where evidence of other sales had been permitted by defendant to be introduced, without objection.

Same—Proof of Adoption—Documentary Evidence—Certified Copies.

    10.  Under section 3206, Code of Civil Procedure, certified copies of the records of the county commissioners showing the result of an election on the question of local option, together with a certified copy of the affidavit of the publisher of the newspaper giving notice of the

*election*, made by the county clerk, the legal custodian of the originals, were properly admitted in evidence.

Same—Regularity of Election—Proof—Judicial Notice.

11. Although courts may not take judicial notice of the fact that a special election has been held in a county on the question whether or not local option shall obtain, it is not incumbent upon the state to go further than to show that an election had been held and notice thereof given, and it need not show that such election was in all respects regular.

Same—Regularity of Election—Evidence.

12. A defendant, charged with violating the local option law, cannot introduce evidence impeaching the regularity of the election in pursuance of which the law became operative, since to permit such a course would bring about a collateral attack upon the proceedings of another tribunal—the board of county commissioners—clothed by law with the duty to hold the election and declare the result, and, further, in view of section 3188 of the Political Code, specifically providing for a contest of such an election.

Same—Adoption—Evidence—Instructions.

13. On a trial for the violation of a local option law, it was the duty of the court to ascertain whether the law had become operative; the evidence on the question was properly addressed to it, and not to the jury; and, having found that the election had been held and carried and notice of the result given, it correctly told the jury in an instruction that the law was operative in the county.

Same—Election—Publication of Result—Evidence.

14. The question of the legal publication of the result of a special election on local option, while open to inquiry on a trial for a violation of the law after put in force, must be determined by the court and not by the jury.

Same—Evidence of Sales—Question for Jury.

15. Defendant's motion for direction of a verdict in his favor at the close of the state's case was properly denied, where the evidence showed, *prima facie*, a sale of intoxicating liquor in violation of the local option law. The question of defendant's guilt or innocence was one for the jury.

Same—Witnesses—Informers—Competency.

16. The mere fact that the county attorney furnished the money to a spotter, a detective or hired informer, with which to purchase intoxicating liquor, contrary to the provisions of the local option law, does not render the evidence thus furnished incompetent, nor is it a defense to a prosecution of this kind.

Same—Complaint—Evidence—Variance.

17. The term "directly," as used in the Act prohibiting the sale of intoxicating liquor, directly or indirectly, means an exchange for money, as distinguished from a sale by a device resorted to for the purpose of evading the law; therefore, there was no variance between a complaint charging that the sale of liquor was made "directly," and proof showing it had been made by a barkeeper instead of the defendant himself.

Same—Evidence—Regularity of Election.

18. Since the regularity of a special election held for local option purposes could not be inquired into in a prosecution for the violation of the law after it had been declared to be in force, an offer to prove that notice of the election had not been published for the time required by the statute, was properly refused.

Same—Adoption—Election—Publication of Result—Evidence—Offer of Proof.

   19.   Even assuming that publication of notice of an election on the question of local option had been ordered by the county commissioners in more than one paper, and the result had been published in only one of them, this was sufficient to give notice to the public, the presumption being, in the absence of a specific showing to the contrary, that the notice of election was ordered published in the paper in which the result appeared; hence proof offered to show that the result had not been published in all the papers which contained the notice of election, was properly excluded, the offer not having been confined to proof of the fact that publication of the result had not been made in any of them.

Trial—Instructions—Request—Refusal.

   20.   Where the court, in instructions given, has substantially covered the matters embraced in those claimed to have been erroneously refused, appellant may not complain.

New Trial—Newly Discovered Evidence.

   21.   A new trial, asked for on the ground of newly discovered evidence, was correctly refused where the affidavits, filed in support of the motion, tendered evidence cumulative in character and wholly failed to show diligence on the part of appellant to secure the evidence prior to trial.

Same—Misconduct of Jurors.

   22.   Affidavits of jurors, filed by appellant in an effort to secure a new trial, on the ground of misconduct on the part of the jury, which did not tend to show that the verdict was reached by a resort to chance, or any other means than by a compromise of the differences of the jurors by mutual concessions, were properly rejected, since a juror may not in any case impeach his own verdict, except when reached by lot or similar means.

*Appeal from District Court, Ravalli County; F. C. Webster, Judge.*

   W. P. O'BRIEN was convicted of violating the local option law, and he appeals from the judgment of conviction and from an order denying him a new trial.   Affirmed.

   *Mr. H. L. Myers, Mr. W. P. Baker, Mr. R. Lee McCullough,* and *Mr. George T. Baggs,* for Appellant.

   The allegation that the local option law had become operative by reason of an election is purely a conclusion of law.   The facts going to constitute such election and the facts necessary to put such law into operation should have been pleaded.   (*Commonwealth* v. *Shelton,* 99 Ky. 120, 35 S. W. 128; *Commonwealth* v. *McCarty,* 25 Ky. Law Rep. 585, 76 S. W. 173; *Com-*

*monwealth* v. *Cope,* 107 Ky. 173, 53 S. W. 272; *Commonwealth* v. *Pippin,* 19 Ky. Law Rep. 270, 40 S. W. 252; *Commonwealth* v. *Green,* 98 Ky. 21, 32 S. W. 169; *Commonwealth* v. *Throckmorton,* 17 Ky. Law Rep. 550, 1124, 32 S. W. 130; *Commonwealth* v. *Boyd,* 17 Ky. Law Rep. 538, 32 S. W. 132; *Commonwealth* v. *Howe,* 17 Ky. Law Rep. 551, 32 S. W. 133; *Cook* v. *State,* 25 Fla. 698, 6 South. 451; *Stewart* v. *State,* 35 Tex. Cr. Rep. 391, 33 S. W. 1081; *Hall* v. *State,* 37 Tex. Cr. Rep. 219, 39 S. W. 117.) The adoption of a local law is not judicially noticed by the courts. (*Commonwealth* v. *Shelton,* 99 Ky. 120, 35 S. W. 128; *Stewart* v. *State,* 35 Tex. Cr. Rep. 391, 33 S. W. 1081; *Donaldson* v. *State,* 15 Tex. App. 25; *Temple* v. *State,* 15 Tex. App. 304, 49 Am. Rep. 200; *Alford* v. *State,* 37 Tex. Cr. Rep. 387, 35 S. W. 657; *Williams* v. *State,* 38 Tex. Cr. Rep. 377, 43 S. W. 115; *Morris* v. *Fraker,* 5 Colo. 425; *McIntosh* v. *City of Pueblo,* 9 Colo. App. 460, 48 Pac. 969.)

The word "district," as constitutionally used, means the same to a justice court as "county" means to a district court and a defendant charged with a misdemeanor on trial in a justice court is entitled to be tried in the "district"—i. e., township— in which the offense is alleged to have been committed, subject to a change of venue. (Pen. Code, sec. 1355; Code Civ. Proc., sec. 291; *Olive* v. *State,* 11 Neb. 1, 7 N. W. 444; *State* v. *Krinklaw,* 40 Neb. 759, 59 N. W. 370; *McCauley* v. *Fulton,* 44 Cal. 355; *State* v. *Bunker,* 38 Kan. 737, 17 Pac. 651; *Tincknor* v. *McClelland,* 84 Ill. 471; *Chicago etc. Ry. Co.* v. *Oconto,* 50 Wis. 189, 6 N. W. 607, 36 Am. Rep. 840; *Keely* v. *Sanders,* 99 U. S. 441, 25 L. Ed. 327; Minn. Gen. Stats. 1894, sec. 1511; N. Dak. Rev. Codes, 1899, sec. 1176; Tex. Rev. Stats., 1895, Art. 5064.)

Some authorities hold that, where a "system" is followed in local option violations to evade the law, other sales may be shown to prove the "system." (*Myers* v. *State,* 37 Tex. Cr. Rep. 331, 39 S. W. 938.) Proof of other like offenses may be made to prove intent and to negative mistake or accident. (*State* v. *Newman* (Mont.), 87 Pac. 462.) But there was no "system" claimed here. It was claimed that all sales were

plain, straight sales and violations of law without any systematic evasion or attempt at circumvention of the law. Neither was there any claim by defendant of mistake or accident. Hence, there was neither cause nor excuse for testimony concerning other sales. Such testimony was incompetent and inadmissible, and prejudice will be presumed. (*State* v. *Nield,* 4 Kan. App. 626, 45 Pac. 623; *Commonwealth* v. *Giles,* 1 Gray (Mass.), 466; *King* v. *State,* 66 Miss. 502, 6 South. 188; *Stone* v. *State,* 7 South. 500; *Bailey* v. *State,* 67 Miss. 333, 7 South. 348; *Naul* v. *McComb City,* 70 Miss. 699, 12 South. 903; *Ware* v. *State,* 71 Miss. 204, 13 South. 936; *State* v. *Fierline,* 19 Mo. 380; *Grimes* v. *State,* 44 Tex. Cr. Rep. 542, 72 S. W. 862; *Walker* v. *State,* 44 Tex. Cr. Rep. 546, 72 S. W. 861; *Wilson* v. *State,* 136 Ala. 114, 33 South. 831; *People* v. *Andrus,* 74 App. Div. 542, 77 N. Y. Supp. 780.)

In order to prove a local option election, all of the requisite steps leading up to such election must be shown to have been taken and to have been in conformity with law. An election of this kind held without any order therefor by the board of county commissioners, would have been void and of no effect. At least, the order for the election must have been shown. (*Toole* v. *State,* 88 Ala. 158, 7 South. 42; *Cook* v. *State,* 25 Fla. 698, 6 South. 451; *Commonwealth* v. *McCarty,* 25 Ky. Law Rep. 585, 76 S. W. 173; *Boone* v. *State,* 10 Tex. App. 418, 38 Am. Rep. 641; *Prather* v. *State,* 12 Tex. App. 401; *Akin* v. *State,* 14 Tex. App. 142; *McMillan* v. *State,* 18 Tex. App. 375; *Ex parte Kramer,* 19 Tex. App. 123; *Steele* v. *State,* 19 Tex. App. 425; *Smith* v. *State,* 19 Tex. App. 444; *Carnes* v. *State,* 23 Tex. Cr. Rep. 449, 5 S. W. 133; *Morton* v. *State,* 37 Tex. Cr. Rep. 131, 38 S. W. 1019.)

A public prosecutor cannot inveigle a party into violating the law or deliberately plan and procure a violation of law for the purpose of convicting the offender thereof, and convictions cannot be had and will not be allowed upon such evidence or under such circumstances. (*Walton* v. *City,* 14 Colo. 352, 59 Pac. 840; *Ford* v. *City,* 10 Colo. App. 500, 51 Pac. 1015; *People* v.

*Braisted,* 13 Colo. App. 532, 58 Pac. 796; *Wilcox* v. *People,* 17 Colo. App. 109, 67 Pac. 343; *Steele* v. *State,* 19 Tex. App. 425.)

There is no claim that appellant, personally, directly sold any liquor. It is only claimed that his bar-tender did. That might be a direct sale by the latter, but it could only be an indirect sale by appellant. The prosecutor, having elected to charge a direct sale, must stand on it. Therefore, there was a fatal variance of the proof from the charge. (*Gaiocchio* v. *State,* 9 Tex. App. 387; *State* v. *Conley,* 22 R. I. 397, 48 Atl. 200; *Town of Decatur* v. *Lande,* 93 Ala. 84, 9 South. 382; *Humpeler* v. *People,* 92 Ill. 400.) "Directly" means without the intervention of any other thing, person or agency. (*Nelson* v. *Johnson,* 38 Minn. 255, 36 N. W. 868; *Stillwater Township* v. *Green Township,* 9 N. J. L. 59; *Lyons* v. *United States,* 26 Ct. of Cl. 31.)

In prosecutions for illegal voting at elections, for nonresidence, nonage, lack of registration or other qualification, or upon any other ground, the defendant may always prove as a defense that the election was not a legal election, and, if shown, it is a complete defense, for an election that is not a legal election is no election. (*Ex parte Rodriguez,* 39 Tex. 705; *State* v. *Williams,* 25 Me. 561.) So, a liquor dealer, charged with unlawfully keeping open his saloon on an election day, may show in defense that it was not a legal or a properly ordered election. (*Neimann* v. *State* (Tex. Cr. Rep.), 74 S. W. 558.) Appellant is charged with violating the result of an election, and should likewise be allowed to show that the election was of no validity, and that no one is bound by it. (*In re Wooldridge,* 30 Mo. App. 612; *Ex parte Sublett,* 23 Tex. Cr. Rep. 309, 4 S. W. 894; *Ex parte Tummins,* 32 Tex. Cr. Rep. 117, 22 S. W. 409; *Ex parte Smith,* 34 Tex. Cr. Rep. 284, 30 S. W. 223; *State* v. *Kaufman,* 45 Mo. App. 656; *State* v. *Kampman,* 75 Mo. App. 188; *State* v. *Searcy,* 111 Mo. 236, 20 S. W. 186; *Young* v. *Commonwealth,* 77 Ky. 161; *Cress* v. *Commonwealth,* 18 Ky. Law Rep. 633, 37 S. W. 493; *Blackwell* v. *Commonwealth,* 21 Ky. Law Rep. 1240, 54 S. W. 843; *McCarty* v. *Com-*

*monwealth,* 25 Ky. Law Rep. 585, 76 S. W. 173; *Cook* v. *State,* 25 Fla. 698, 6 South. 451; *Frickie* v. *State,* 39 Tex. Cr. 254, 45 S. W. 810.)

The conviction in this case was secured wholly upon the testimony of two hired "spotters," and it is held that the courts should not let such convictions stand. (*Ford* v. *City,* 10 Colo. App. 500, 51 Pac. 1015; *People* v. *Braisted,* 13 Colo. App. 532, 58 Pac. 796; *Walton* v. *City,* 14 Colo. App. 352, 59 Pac. 840; *Wilcox* v. *People,* 17 Colo. App. 109, 67 Pac. 343; *Steele* v. *State,* 19 Tex. Cr. Rep. 425.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. Dan Yancey,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause originated in a justice's court in Ravalli county, by the filing therein by one J. H. Croughan on May 27, 1905, of a complaint charging the defendant with the sale of spirituous and intoxicating liquor on May 20, 1905, in violation of Chapter X, Title VII, Part III, of the Political Code, known as the "local option law." The charging part of the complaint is that the defendant "did then and there willfully and unlawfully directly sell and vend to said J. H. Croughan spirituous and intoxicating liquor, contrary to the provisions of Chapter X, Title VII, Part III, of the Political Code of the state of Montana, said law having become operative in said Ravalli county on January 7, 1904, by reason of an election previously held therein as provided in said chapter and the election laws of the state of Montana," etc.

The defendant's demurrer to the complaint, on the ground among others that the facts do not constitute a public offense, having been overruled, he moved for a dismissal of the case, on the ground that the justice was without jurisdiction to try him, for that the offense, if committed at all, was committed in

Ward township, and he was entitled to a trial by jury from that township, whereas the jurisdiction of the justice was confined to cases arising in Stevens township, wherein he (the justice) resided. The motion was supported by affidavits showing that the defendant resided and was engaged in business in Ward township. This motion was denied. Thereupon a change of venue was, upon motion of the defendant, granted, and the cause transferred to Corvallis township. A trial by jury having been waived, the defendant was found guilty and sentenced to pay a fine. An appeal was then taken to the district court. The questions presented by the demurrer and motion were submitted to that court and again overruled. Thereupon the defendant moved the court to correct the transcript of the justice's docket, filed with the record, so as to make it recite the proceedings of the justice in accordance with the facts; the motion being supported by affidavits alleging that, upon finding the defendant guilty, the justice proceeded at once to pronounce judgment without fixing a time for that purpose, as provided by statute, which fact the transcript did not show. At the same time a motion was submitted asking that the cause be dismissed, on the ground that the justice did not in fact pursue the statute in fixing a time for the rendition of the judgment, and that, having for this reason lost jurisdiction of the case, the district court had no jurisdiction other than to dismiss it. These motions were denied. A trial then had resulted in a verdict of guilty. The defendant has appealed from the judgment imposing a fine, and from an order denying him a new trial.

In addition to the questions presented by the demurrer and the various motions referred to, all of which are submitted to this court for decision, the defendant has assigned many errors on the admission and exclusion of evidence and upon instructions given by the court, as well as those requested by the defendant and refused. It is also insisted that the court committed prejudicial error in permitting R. A. O'Hara, Esq., to be entered as associate counsel for the state and assist in the trial.

1. It is contended, first, that the court erred in refusing to correct the transcript of the justice so as to make it speak the facts touching the rendition of the judgment. It is said that, if the correction had been made, it would have appeared that the justice, disregarding the mandate of the statute (Pen. Code, sec. 2710) that he must appoint a time, not more than two days nor less than six hours after a plea or verdict of guilty, for the rendering of judgment, rendered judgment immediately; that the result was that no judgment was in fact rendered; that there was therefore no judgment to appeal from; and hence that the complaint should have been dismissed.

We do not think it was within the power of the court to add anything to the docket of the justice. If in any case the transcript does not speak according to the facts, and it becomes necessary to have it amended, the court should upon a proper showing direct the justice to make the correction. The district court does not, on appeal from a justice's court, sit as a court of review, but tries the cause *de novo.* (Code Civ. Proc., sec. 1761; Pen. Code, sec. 2717; *Missoula El. Light Co.* v. *Morgan,* 13 Mont. 394, 34 Pac. 488.) After the cause reaches that court, the trial and other proceedings are the same as in causes originating there, its jurisdiction depending upon the fact of jurisdiction by the justice's court of the subject matter and of the parties. That the justice had jurisdiction of the offense charged here is clear (Code Civ. Proc., sec. 68); that it had jurisdiction of the defendant is also clear, because the record discloses his plea of not guilty and his presence at trial and judgment. The defendant, having by his appeal asked for a trial *de novo,* cannot be heard to insist that the district court should confine its action thereon to a review of errors and irregularities in the proceedings of the justice, and determine the case accordingly. By taking the appeal, the irregularities attending the rendition of judgment were waived. The motion was properly denied.

2. It is argued that the demurrer should have been sustained, because the complaint is insufficient to state an offense, in that it does not allege that all the steps necessary to make the statute

operative were taken by the authorities of Ravalli county upon the initiative of the electors, as required by the provisions of the statute.

The statute provides that upon the presentation of a petition, signed by one-third of the qualified electors of the county, the board of commissioners must call an election to be held within forty days from the reception of the petition to determine whether or not spirituous or malt liquors, wine or cider, or any intoxicating liquor or drinks may be sold within the county. (Pol. Code, sec. 3180.) If it is ascertained that the petition is sufficient, notice must be given by publication for four successive weeks in such newspapers of the county as the board may direct. (Sec. 3181.) Then follow provisions prescribing the form of the ballot, and directing the establishment of polling places, the canvass of the returns, and the publication of the result, after the record is made up by the board. The election is held under the general election laws, but special registration is not required. (Secs. 3182, 3183.) The result must be published for four successive weeks in *the paper* in which the notice of election was given. The statute becomes operative at the expiration of the time of publication. (Sec. 3184.) From that time sales are prohibited, and violations of the Act are punished as misdemeanors. (Secs. 3186, 3187.) Section 3188 provides: "Any election held under the provisions of this chapter may be contested in the same manner as prescribed in Title III, Part III, of the Code of Civil Procedure."

Many of the states have enacted such statutes, and, while they differ as to the mode of the election and the method by which notice of the result is given, their provisions are substantially the same as those of our statute. The operation of such a law being made effective, not by its own terms upon the approval of the governor, but by the observance of certain conditions precedent by the people and officials of any county, all these conditions precedent must be fulfilled.

The courts of the different states differ widely, however, upon the question whether in charging a violation of the statute it is

incumbent upon the state to allege in detail the observance of these conditions. In Kentucky and Texas this is the rule. (*Commonwealth* v. *Throckmorton,* 17 Ky. Law Rep. 550, 1124, 32 S. W. 130; *Commonwealth* v. *Cope,* 107 Ky. 173, 53 S. W. 272; *Commonwealth* v. *McCarty,* 25 Ky. Law Rep. 585, 76 S. W. 173; *Stewart* v. *State,* 35 Tex. Cr. Rep. 391, 33 S. W. 1081; *Hall* v. *State,* 37 Tex. Cr. Rep. 219, 39 S. W. 117.) In Maryland, Michigan, Missouri, Georgia, Pennsylvania, and Virginia the rule is otherwise. (*People* v. *Adams,* 95 Mich. 541, 55 N. W. 461; *People* v. *Whitney,* 105 Mich. 622, 63 N. W. 765; *Crouse* v. *State,* 57 Md. 327; *Slymer* v. *People,* 62 Md. 237; *Mackin* v. *State,* 62 Md. 244; *Combs* v. *State,* 81 Ga. 780, 8 S. E. 318; *Rauch* v. *Commonwealth,* 78 Pa. St. 490; *State* v. *Searcy,* 39 Mo. App. 393; s. c., 111 Mo. 236, 20 S. W. 186; *Thomas* v. *Commonwealth,* 90 Va. 92, 17 S. E. 788.)

In Maryland, Virginia and Georgia an indictment in the ordinary form, concluding, ''contrary to the form of the statute,'' etc., is deemed sufficient. The courts of these states proceed upon the theory that the fact that an election has been had making the law operative in the particular county, and the regularity of the proceedings in connection with it, including the proclamation of the result, are matters to be determined by the court, and issues upon them may not properly be submitted to the jury. In *Combs* v. *State, supra,* the court took judicial notice of the fact that the law had become operative. The supreme court held this to be proper, and hence that an instruction to the jury that the law was operative in the county where the sale was made was correct. The same rule is recognized in Pennsylvania and Virginia. (See cases cited.)

In Maryland, while it is held that the court may not take judicial notice of the result of the election (*Whitman* v. *State,* 80 Md. 410, 31 Atl. 325), yet the rule is well established that the evidence touching the election proceedings is addressed to the court, and not to the jury, because it is exclusively the province of the court to ascertain and determine what the law is in order that it may instruct the jury.

In Missouri and Mississippi it is held sufficient if the indictment alleges that the law has become operative by reason of an election held in pursuance of its provisions and the general election laws of the state. This is the rule in Florida, also (*Cook* v. *State,* 25 Fla. 698, 6 South. 451), though the burden is upon the state to show that the law has been put in force by a valid election, which, it seems, requires proof of all the successive steps necessary to show such fact, as is the case in Kentucky and Texas.

We think the complaint in this case sufficient. It meets all the requirements of the statute. (Pen. Code, secs. 1841, 2680.) If it be assumed that it must appear by direct allegation that all the precedent conditions have been fulfilled, this ultimate fact is sufficiently alleged. How far the inquiry may go touching the regularity of the election proceedings we shall notice later.

3. The contention that the justice elected in Stevens township was without jurisdiction of an offense committed in Ward township must be overruled. Under our system, justices' courts have jurisdiction of the offenses enumerated in section 68 of the Code of Civil Procedure, "committed within the respective counties in which such courts are established." The enumeration includes the offense charged here. There is nowhere in the statute any limitation upon this charter of power. On the contrary, it is the duty of the justice, when he is satisfied upon complaint of any citizen that an offense has been committed, to issue a warrant of arrest and have the offender brought before him for trial or examination, as the case may be. (Pen. Code, secs. 2681, 2683, 1591.) These provisions seem conclusive. But counsel insist that they must be held inoperative or, at least, ought to be construed with reference to section 16 of Article III of the Constitution, which declares: "In all criminal prosecutions the accused shall have * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject," etc. It is said that the word "district," in the expression "county or dis-

trict," is synonymous with the term "township"—can mean
nothing else—and hence that the section, properly interpreted,
guarantees to persons charged with misdemeanors over which
justices' courts have jurisdiction a trial by a jury from the
township in which the misdemeanor has been committed. Since
this is so, it is said, it follows necessarily that the defendant
must have been prosecuted in the township in which the alleged
offense was committed.

The design of this provision of the Constitution is to furnish
a guaranty to every person charged with a crime of a trial by a
jury from the vicinage or neighborhood where the crime is sup-
posed to have been committed, so that he may have the benefit,
on his trial, of his own good character and standing with his
neighbors, if these he has preserved, and also of such knowledge
as the jury may possess of the witnesses who may give evidence
against him. (Cooley's Constitutional Limitations, sec. 459.)
This guaranty is made good to him if he enjoys these rights. At
common law the accused was, for these same reasons, entitled to
a trial by a jury from the vicinage or neighborhood; but these
terms were interpreted to mean the county within which it was
alleged the crime was committed. (4 Blackstone's Commen-
taries, 350.) Hence, in this connection, the terms are synony-
mous with the term "county." The term "county" is there-
fore used in a restrictive sense, limiting the legislature and the
courts in the exercise of power in the punishment of criminal
offenders. (*Olive* v. *State,* 11 Neb. 1, 7 N. W. 444; *State* v.
*Kemp,* 34 Minn. 61, 24 N. W. 349.) The word "district" is
used in the same restrictive sense; and, as the term "county"
must be held to mean the precise portion of the territory or
political division of the state over which the court sitting for the
trial of causes may exercise power in criminal matters, so must
the term "district" be held to have exactly the same applica-
tion, for the meaning of the constitutional provision is that the
accused shall be tried by a jury drawn from the county or dis-
trict, whether the latter be greater or less than a county, when
the criminal jurisdiction of the court in which he is being tried

extends to crimes committed anywhere in the county or district. (*State* v. *Kemp, supra.*)

It is sufficient to say, then, that since the jurisdiction of the justice of the peace courts over criminal matters is such as, under the Constitution (Article VIII, sec. 21), may be provided by law, and since by law (Code Civ. Proc., sec. 68) it extends to all misdemeanors enumerated, when committed in the respective counties in which they are established, it must follow that the justice's court of Stevens township had jurisdiction to try the defendant for the crime charged against him, though it was committed in Ward township. At the same time, since the term "district" may apply to a portion of territory greater or less than a county, the conclusion may be entertained that the legislature might create trial districts greater or less than a county. Whether it may do so need not now be determined, for the validity of such legislation would depend upon various considerations which we cannot now examine. If this could be done, in order to be valid so far as this limitation is concerned, it would have to provide for the drawing of juries from the whole body of the district and exclusively from within it.

Since the justice had jurisdiction, the appeal clothed the district court with power to proceed, and the motion to dismiss was properly overruled.

4. R. A. O'Hara, Esq., was ostensibly employed by the county commissioners of Ravalli county to assist the county attorney in the trial. It is said that the court erred in permitting him to do so over objection of the defendant, because the board of commissioners, as such, may not employ special counsel in criminal cases at the expense of the county. We may not in this proceeding inquire what power such boards have in this regard. Whether or not they have power to hire special counsel in criminal cases is a question not at all pertinent. In order to avoid the objection made by counsel to Mr. O'Hara's participation in the trial, the court of its own motion made a formal order appointing him to assist the county attorney. Why this was done does not appear. We must presume that it was done with the

assent of the county attorney, and that there was sufficient reason for the action. Such being the case, and nothing appearing to show misconduct on the part of Mr. O'Hara, there was no error. (*State* v. *Whitworth,* 26 Mont. 107, 66 Pac. 748.) But, even without the order of appointment, it would have been proper to allow Mr. O'Hara to take part in the trial; there being no objection by the county attorney. He appeared as counsel employed specially by the board. It was held by this court in *State* v. *Tighe,* 27 Mont. 327, 71 Pac. 3, that it was proper to permit the county attorney to have the assistance of counsel, though he was employed and paid by private parties. The members of the community do not lose interest in the prosecution of criminals when they elect an officer whose duty it is to prosecute them; nor do they surrender their right to employ all just and proper means to see that the rights of the state are preserved. When the exigencies of the case demand it, as when the public prosecutor is without experience or incompetent, or is confronted by an array of able and talented counsel who appear for the defendant, in a difficult and complicated case, the interests of the state demand that he have assistance. In all such cases it is within the discretion of the court to appoint competent counsel to assist, or to permit counsel employed by private parties, or even volunteers, to appear for that purpose. The defendant is entitled to a fair and impartial trial, but nothing more. Special counsel are subject to the same control by the court as the public prosecutor, and, so long as they are not guilty of conduct prejudicial to the defendant, the latter has no right to complain.

In this case it was no concern of the court that the board of county commissioners had no authority to pay out the money of the county, if such were the case. The only concern it had was to see that the defendant had a fair and impartial trial, and that the state was properly represented by counsel. And, in the absence of anything to show that the defendant suffered any wrong, we cannot hold that it was error to permit special counsel to assist the prosecuting attorney.

5. One of the witnesses for the state, during the course of his examination, was asked this question: "Do you remember who made the first purchase when you first went in?" This was objected to by counsel for defendant on the ground that it was incompetent, irrelevant and immaterial, as tending to prove other sales than the one charged in the complaint. The objection was overruled. This ruling is assigned as error. It is urged that, since the state elected to charge one specific sale, it was not competent to prove other sales in order to bolster up the evidence tending to establish the particular one charged. The position assumed by counsel for the defendant is no doubt correct under the general rule.

The evidence brought out here by the question was not sought for that purpose. The circumstances attending the sale, as is shown by the testimony of the witness, are these: The witness and Croughan went together to the business house of the defendant for the purpose of making a purchase from the defendant in order to become witnesses in the prosecution against him for violation of the local option law. They remained in the place only a few minutes. While there the witness purchased a drink of whisky for himself and a cigar for Croughan. Immediately afterward Croughan bought a drink for himself and a cigar for the witness. Counsel, having evidently been informed by the witness as to what took place at the time, sought by the question propounded to bring out the facts showing the whole transaction. The sales made to the witness and his companion, Croughan, were virtually the same transaction, the one immediately following the other. Inasmuch as this was the case, we do not think there was any error in the ruling, especially so when we consider the following instruction which the court submitted to the jury, which confined them to a consideration of the evidence touching this transaction only: "The court instructs the jury that the defendant is not on trial for being a saloon-keeper, or selling liquor to the public, but the defendant is charged with making one particular sale of intoxicating liquor to one J. H. Croughan; and no matter what his business

may have been, or what else he may have done, or what he may have sold to others, or whatever sales he may have made, the state must prove him guilty beyond a reasonable doubt, from the evidence brought out here before you, of that particular sale charged, or you should find the defendant not guilty." Incidentally, also, other sales were proven; the evidence touching them going in without objection. Since this was the case, we do not see how the defendant could have been prejudiced by the evidence, even if it in effect tended to show two separate and distinct sales.

6. In order to show that the statute was operative in Ravalli county, counsel for the state were permitted to introduce in evidence a certified copy of the record of the county commissioners showing the result of the election as declared by that board, together with a certified copy of the affidavit of the publisher of the "Western News," a newspaper published at Hamilton, the county seat, showing that due publication of the result had been made. Objection was made to these documents that they had not been properly identified as parts of the records of the county, that they were not competent for any purpose, and that they did not show that an election had been called or held as provided by the statute, or that the result had been published as required. The objections were properly overruled. The certified copies were made by the county clerk, the legal custodian of the originals. They were properly proved. (Code Civ. Proc., sec. 3206.) The copy of the affidavit was presumptive evidence of the facts stated therein. (Code Civ. Proc., sec. 3131.)

As pointed out above, some courts, as in Virginia and Georgia, take judicial notice that the law has been put into operation by an election. Hence, in those states, the regularity of the election may not be put in issue and tried by the jury; and this upon the theory that the court must know the law and properly instruct the jury thereon. So in Maryland, though the court does not take judicial notice of the election (*Whitman* v. *State, supra*), yet it will not permit inquiry into the regularity of it, for the reason that this course would lead to the absurd result

that in one case the jury would find that the law was properly in force and had been violated, and in another, though the violation had been well established, that the defendant was not guilty because the law was inoperative on the ground of irregularity. (*Crouse* v. *State, supra.*) It was held, as an additional conclusive reason why this inquiry should not be made, that it would permit a collateral attack upon the proceedings of another tribunal, clothed by law with the duty to hold the election and declare the result, which would violate the principle that title to office can never be inquired into collaterally. The court held that, the declaration of the result being *prima facie* correct, this implied that the election had been in all respects regular, and was conclusive until contested and set aside in the mode prescribed by law. The decisions in *State* v. *Cooper*, 101 N. C. 684, 8 S. E. 13, and in *Combs* v. *State, supra*, also recognize this reason as conclusive. (See, also, *Woodard* v. *State*, 103 Ga. 496, 30 S. E. 522.)

In this state the holding of a special election, such as the one in question here, is not among the matters of which the court may take judicial notice (Code Civ. Proc., sec. 3150), because the court may not take judicial notice of extrinsic facts, the establishment of which must depend upon the testimony of witnesses. While it does take notice of the law as one of the public laws of the state, it may not judicially know that a special election has been held in a particular county. Nevertheless we do not think that it was incumbent upon the state to go further and show that the election was in all respects regular, or that it was permissible for the defendant to introduce evidence to impeach it. The fact that the statute itself (sec. 3188, *supra*) provides for a contest, such as is provided for in case of public officers, supports this view, and we adopt the conclusion announced in the cases last cited.

It was the duty of the court to ascertain the law. The evidence was properly addressed to it, and not to the jury; and, having found that the election had been held and notice thereof given, it properly told the jury in an instruction on the subject

that the law was operative in Ravalli county. To be sure, the fact of publication of the result was open to inquiry, because that did not involve the regularity of the election proceedings, yet whatever controversy there may be on this subject in any case must be determined by the court, otherwise the same confusion would result as would flow from permitting a collateral attack upon the election proceedings.

7. The defendant's motion for direction of a verdict in his favor at the close of the state's case was properly denied. The evidence submitted shows, *prima facie,* a sale of whisky in violation of the statute. The question of defendant's guilt was one for the jury. But it is argued that it appeared therefrom that the county attorney had furnished the money with which the purchases were made by the state's witnesses, and that, since the prosecuting officer had himself thus induced the violation of the law, a conviction could not be had. Such evidence is always competent (*In re Welcome,* 23 Mont. 450, 59 Pac. 445), and it is no defense to a prosecution of this kind that the purchase was made by a spotter, a detective, or hired informer. (12 Cyc. 447; 23 Cyc. 184.)

It is argued, also, that the complaint charges that the sale was made directly, but that the evidence shows it was made by a barkeeper, or indirectly, and hence that there is a fatal variance between the charge in the complaint and the evidence. The statute prohibits sales made directly or indirectly. The term "directly," as here used, does not mean a sale by the defendant himself, as counsel argue, but an exchange for money, as distinguished from a sale by some device resorted to to evade the law, as, for illustration, under a pretense of giving as a bonus upon a sale of other articles, or the like.

8. The defendant, as a part of his case, offered to prove that the notice of election had not been published for the time required by the statute. Upon objection, this evidence was excluded. This ruling is assigned as error. For the reasons already stated, this ruling was correct. The regularity of the election could not be inquired into.

Evidence was also offered that the declaration of the result was not published in all of the papers in which the notice of election was published. This was also properly excluded. The evidence was probably intended to show that publication of the result had not been made as provided in section 3184, *supra.* While it was perhaps competent for the defendant to show, if he could, that such was the case, and thus to enlighten the court upon the question whether the law was operative in Ravalli county, the offer was not specific enough, in that it was not confined to proof of the fact that publication was ordered in certain papers by name, and that publication of the result was not made in any of them. Upon the assumption that the board had ordered publication of the notice in more than one paper—and the evidence does not show how that was—and that the result had been published in only one of them, still this was a sufficient notice that the law was in force. The purpose of the publication of the result is to give notice to the public, and this was accomplished by proclamation or publication in one paper; the presumption being, in the absence of a specific showing to the contrary, that the notice of election was ordered published in such paper.

9. Among other instructions submitted to the jury, the court gave the following: "The court instructs the jury that the provisions of the Codes of Montana, known as the 'local option law,' were adopted in Ravalli county by reason of an election held in said county on December 1, 1903, and became effective in said county on January 7, 1904, and that since said last-mentioned date it has been and now is unlawful in said county for any person to sell either directly or indirectly, or give away to induce trade at any place of business, or furnish, to any person any alcoholic spirituous, malt, or intoxicating liquors." (Instruction No. 4.) In view of what has already been said, extended comment is not necessary. It was the exclusive province of the court to inform the jury as to the law applicable to the case, and, having determined from the evidence submitted that the statute had become operative, it was proper for the jury to

be explicitly informed that such was the case. There was no error in giving it.

Complaint is made of other instructions given; but when the whole charge is taken together, we think no material error can be found in it. The instructions refused were all substantially covered by those given. On the whole, the case was fairly tried and properly submitted to the jury.

10. It is contended that the court should have granted a new trial on the ground of newly discovered evidence. The affidavits filed in support of the motion on this ground tender evidence which is wholly cumulative in character, and fail entirely to show diligence on the part of the defendant to obtain it prior to the trial. The motion was properly overruled, so far as it was based on this ground.

11. Finally, it is contended that a new trial should have been granted on the ground of misconduct on the part of the jury, by which a fair and due consideration of the case was prevented. The affidavits offered to establish misconduct do not tend to show that the result was reached by a resort to chance or any other means than by a compromise by the different jurors of their differences by mutual concessions. In *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376, it was pointed out by this court that a juror may not in any case be permitted to impeach his own verdict by showing what occurred in the jury-room, except where the verdict is reached by lot, or by any similar means. This case is not brought within this exception. The court properly rejected the proof tendered.

Finding no error in the record, we are of the opinion that the judgment and order should be affirmed. It is so ordered.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Smith concur.