(March 18, 1911.)

## STATE, Respondent, v. C. E. SCHMITZ, Appellant.

### [114 Pac. 1.]

LOCAL OPTION—PROHIBITION DISTRICT—ALLEGATIONS OF INFORMATION—
PROOFS—JUDICIAL NOTICE—EVIDENCE OF OTHER OFFENSES.

(Syllabus by the court.)

1. Under the provisions of sec. 12 of the local option statute (1909 Sess. Laws, p. 13), it is not necessary for the prosecutor to allege in his information for the violation of the local option statute the facts showing that the required number of voters petitioned for the election, or that the election was held, or that a majority of the people voted in favor of prohibiting the sale of intoxicating liquors; nor is it necessary to allege or prove that the defendant did not have a license permitting him to sell or dispose of intoxicating liquors. Under the provisions of this section of the statute, the burden is on the defendant to show that he held a license at the time of the commission of the act complained of and to justify his action thereunder or under some provision of the statute.

2. An information charging the unlawful sale of intoxicating liquors which concludes with the clause, "Contrary to the form, force and effect of the statutes in such cases made and provided and against the peace and dignity of the state of Idaho," is a sufficient allegation that the liquor was sold or disposed of contrary to law, whether it be the local option law or any other public statute.

3. Under the provisions of subd. 2, sec. 5950, Rev. Codes, courts of this state will take judicial notice as to whether or not the local option statute is in force in any particular county, and will advise the jury accordingly in the case of a prosecution for a violation of such statute.

4. Where one is prosecuted for aiding and abetting an unlawful sale of intoxicating liquor in a prohibition district by prescribing a quart of whisky and directing on the prescription that the purchaser thereof shall "drink all at once," and the defendant claims that the direction as to the amount to take at a time was a mere pleasantry or humorous addition made to the prescription, it is not improper for the state to prove that at or about the same time the defendant gave other prescriptions for like quantities and wrote on the prescription the same direction, "drink all at once."

APPEAL from the District Court of the Seventh Judicial District, for Washington County.   Hon. Ed. L. Bryan, Judge.

Prosecution for violation of the local option statute.   Defendant was convicted and appeals.   *Affirmed.*

Frank Harris and Lot L. Feltham, for Appellant.

''An indictment under the local option law must show that the law was in force in the jurisdiction.''   (2 Current Law, 569, and cases cited note 98.)

''The court, under Code Civ. Proc., sec. 3150, specifying the facts the courts must take judicial notice of, cannot take notice of the fact that a local option election has been held in a particular county.''   (*State v. O'Brien,* 35 Mont. 482, 90 Pac. 514, 10 Ann. Cas. 1006.)

''An indictment under the local option law should aver facts showing that the act was in force at the time of the selling in the district where the sale took place.''   (*Com. v. Reynolds,* 4 Ky. Law, 623; *Com. v. Throckmorton* (Ky.), 32 S. W. 130; *Com. v. Shelton,* 99 Ky. 120, 35 S. W. 128; *Norton v. State,* 65 Miss. 297, 3 So. 665; *Loughridge v. State* (Miss.), 3 So. 667; *State v. Searcy,* 111 Mo. 236, 20 S. W. 186; *Lowery v. State* (Tex. Cr. App.), 34 S. W. 956; *Alford v. State,* 37 Tex. Cr. 386, 35 S. W. 657; *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65; *Gifford v. Falmouth,* 4 Ky. Law, 902; *Whitman v. State,* 80 Md. 410, 31 Atl. 325; *State v. Mackin,* 41 Mo. App. 99.)

''Under the statute making a sale as a beverage a necessary element of the offense of liquor selling by a druggist, an indictment which fails to allege that the liquor was sold as a beverage is defective.''   (*State v. Buckner,* 20 Mo. App. 420; *State v. Dunlap,* 81 Me. 389, 17 Atl. 313; *State v. Abbott,* 31 N. H. 434.)

Proof of other distinct and disconnected crimes of the same character by defendant is not admissible.   (McClain's Crim. Law, sec. 461; *Janzen v. People,* 159 Ill. 440, 42 N. E. 862; *Parkinson v. People,* 135 Ill. 401, 25 N. E. 764, 10 L.

R. A. 91; *Towne v. People,* 89 Ill. App. 258; *People v. Lons-dale,* 122 Mich. 388, 81 N. W. 277.)

D. C. McDougall, Atty. Gen., O. M. Van Duyn and J. H. Peterson, Assistants, and J. L. Richards, Pros. Atty., for Respondent.

Sec. 12 as found in the Idaho local option statute would indicate a leaning on the part of the legislature, if not a complete intent, to do away altogether with proof before the jury that an election was had, allowing it to be determined judicially by the court and apparently allowing it to be reached in the way of a defense by the defendant. In Georgia, Pennsylvania and Virginia, it is held that the courts judicially recognize the fact that a local option law is in operation in the counties which have adopted it. (*Combs v. State,* 81 Ga. 780, 8 S. E. 318; *Barker v. State,* 117 Ga. 428, 43 S. E. 747; *Rauch v. Com.,* 78 Pa. 490; *Savage v. Com.,* 84 Va. 582, 5 S. E. 563; *Thomas v. Com.,* 90 Va. 92, 17 S. E. 788; *Hargrave v. Com.* (Va.), 22 S. E. 314; see, also, *Young v. Com.,* 14 Bush (Ky.), 161; *Slymer v. State,* 62 Md. 238; *Mackin v. State,* 62 Md. 244; *Jones v. State,* 67 Md. 256, 10 Atl. 216; *State v. Bertrand,* 72 Miss. 516, 17 So. 235; *State v. McIlvenna,* 21 S. D. 489, 113 N. W. 878.)

Evidence of other offenses for the purpose of showing motive and intent is competent evidence. (Underhill, Crim. Ev., 2d ed., sec. 88.)

AILSHIE, Presiding J.—The appellant was convicted in the district court of Washington county for aiding and abetting Joseph Lorton, a druggist, in the unlawful sale of intoxicating liquors. The charging part of the information is as follows:

"That the said C. E. Schmitz, at Washington county, Idaho, on or about the 4th day of February, 1910, then and there being, and being then and there a duly licensed physician in this state, did unlawfully aid and abet an unlawful sale of intoxicating liquor to one Lem Wilkerson, by then and there writing for the said Lem Wilkerson a certain alleged

prescription for whisky, with the knowledge and intent that said alleged prescription would be, and the same was, used by the said Lem Wilkerson to make an unlawful purchase of said liquor from a pharmacist, in Washington county, Idaho, to wit, Joseph Lorton, at Cambridge, said county and state; which said alleged prescription was in the words and figures following: 'Dr. C. E. Schmitz, Physician and Surgeon. Cambridge, Idaho, R. for Lem Wilkerson. Whiskey 1 qt. Sig. Drink all at once. 15024. 2/4/'10. Dr. S. '—all of which is contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dig-nity of the state of Idaho.''

The first question requiring our consideration is the contention made by appellant that the information was insufficient to charge the commission of a public offense, for the reason that it failed to charge that Washington county was a prohibition district. Our consideration of this question will carry with it the question as to the necessity of making proof to the same effect. It will be observed from the information as above set forth that it contained no charge or allegation that the local option law was in force in Washington county or that the county constituted a prohibition district, except as it charged that the acts alleged were ''contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the state of Idaho.''

Sec. 12 of the local option statute (1909 Sess. Laws, p. 13) provides as follows:

''In any complaint, information or indictment for selling or disposing of intoxicating liquors without license in a prohibition district, it shall not be neccessary to set forth, neither shall it be necessary to prove upon the hearing or trial, the facts showing that the required number of voters petitioned for the election, that the election was held or that a majority voted in favor of prohibiting the sale as herein provided, nor shall it be necessary to allege or prove that the defendant did not have a license lawfully permitting him to sell or dispose of intoxicating liquors, but the burden shall be

on the defendant to show that he held such a license at the time of the commission of the act complained of.''

It will be seen from the foregoing provisions of the statute that it is specifically declared thereby that it shall be unnecessary to allege any of the things required to be done to hold a local option election, and that it is likewise unnecessary to allege that an election has been held, and that a majority of the people have voted in favor of prohibiting the sale of intoxicating liquors within the county, nor is it necessary to allege or prove that the defendant did not have a license. It is likewise specifically provided ''that the burden shall be on the defendant to show that he held a license at the time of the commission of the act complained of.'' Under the statute of this state, it is unlawful to sell intoxicating liquor without a license except for medicinal purposes, whether it be in a prohibition district or elsewhere, and so the statute (sec. 12 of the local option law) evidently intended to rest the burden of showing the legality of the sale on the defendant, and relieve the state of the necessity, in the first place, of showing that the sale was an unlawful sale. The legislature undoubtedly thought it would be enough for the state to show that a sale of liquor had been made, or, as in the case at bar, that the defendant had aided and abetted in an unlawful sale, and that the burden of showing that the defendant had purchased the authority to make such sale, or aid and abet such sale, should be a matter of defense. The statute of this state treats the traffic in intoxicating liquors as an unlawful and illegitimate business, and it has shifted the burden of showing that any particular sale or traffic is under authority and color of law onto the party who engages in the business or aids the traffic.

It is difficult to see what would be left for the state to allege or prove with reference to the creation of a prohibition district or the operation of the law within a certain county, if it be unnecessary to prove that an election has been held or a majority of the votes cast in favor of prohibiting the sale of intoxicating liquors. Sec. 7 of the act, which provides the only thing that shall be done after the

holding of the election in order for the district to become a prohibition district, says: "The board of county commissioners shall meet within ten days after such special election and canvass the returns and declare the result of the election. If a majority of the votes cast at such election shall be in favor of the proposition submitted, it shall thereafter be unlawful for the board of county commissioners of the county to grant any person, firm, . . . . a license to sell or dispose of intoxicating liquors, . . . . " etc.

Again, the allegation that Washington county was a prohibition district would not be conclusive that the defendant did not have a right to sell intoxicating liquors. The act itself provides that no license issued prior to the passage thereof shall be terminated or affected by reason of the adoption of the law in any county. The local option statute did not become effective until April, 1909; the sale alleged to have been aided and abetted was made in February, 1910; so that the defendant or the person he was aiding or abetting, or both, might have had a license, or licenses, at the time for the sale of intoxicating liquors. This would clearly have been a matter of defense under sec. 12, *supra.*

This prosecution is under sec. 23 of the act, which reads as follows: "Any person who shall make, aid, abet, counsel or procure an unlawful sale, unlawful purchase, unlawful gift, or other unlawful disposition of intoxicating liquor, or shall act as agent or assisting friend of the seller in procuring or effecting the unlawful sale or purchase of any such liquors, shall be guilty of a misdemeanor and punished as provided in sec. 30 of this act."

One might as well aid and abet an unlawful sale of liquor in a county which does not constitute a prohibition district as he can in a prohibition district. If the seller did not have a license authorizing him to sell intoxicating liquors or authority of law to sell as a druggist, the sale would be unlawful, whether within or without a prohibition district, and one who aided or abetted the seller in making such sale would, under sec. 23, be liable and punishable as provided in sec. 30 of the act.

It has been argued, however, that under sec. 5950, Rev. Codes, the courts cannot take judicial notice of the holding of a local option election, or the adoption of the local option law in any county. That section provides, among other things, as follows: ''Courts take judicial notice of the following facts . . . .

''2. Whatever is established by law.''

It is admitted that if the foregoing section covers this case, it must fall within the terms of subdivision 2 thereof, and on the theory that it is a thing established by law.

Counsel for appellant contend, on the other hand, that while the law has been enacted and is a general law, it could only be adopted in the county by vote of the people, and that the courts are not authorized to take notice of the result of such an election. In support of this counsel place special reliance on *State v. O'Brien,* 35 Mont. 482, 90 Pac. 514, 10 Ann. Cas. 1006. In that case the Montana court, in passing upon a similar statute and considering whether or not the courts would be justified in taking judicial notice of the adoption of the local option law in any given county, said: ''In this state the holding of a special election, such as the one in question here, is not among the matters of which the court may take judicial notice (Code Civ. Proc., sec. 3150), because the court may not take judicial notice of extrinsic facts, the establishment of which must depend upon the testimony of witnesses. While it does take notice of the law as one of the public laws of the state, it may not judicially know that a special election has been held in a particular county.''

It is evident from the foregoing excerpt that the Montana local option law does not contain a provision similar to sec. 12 of our local option law as above set forth. Over and above all this, however, we are not satisfied with the line of reasoning that reaches the conclusion that the judge of the court knows less about the law than the defendant at bar. The defendant would not be heard for a moment to show in evidence that he did not in fact know that the local option statute had been adopted in a given county, while in truth and in fact he might not know that it was in force in the

county in which he was charged with its violation. He might live in a remote, isolated part of the county, or he might be a newcomer; still, he would not be heard to say that he did not know he was in a prohibition district. On the other hand, and according to the Montana rule—and we are frank to say that it seems to be a rule followed in many other states—the judge who is holding court in the county will not be presumed to know that the county is a prohibition county, or that the local option statute has been adopted therein, and the state must actually prove to him by compe· tent evidence that the law is in force in such county. While an election is necessary in order to create the county into a prohibition district and put the law in operation in such county, still, when this is done it is a thing "established by law," and in our judgment is one of the things of which he must take judicial notice. He may not know that a partic- ular statute printed in the Session Laws has been constitu- tionally adopted by the legislature or enacted at all, and yet he must take judicial notice of it. This requirement has never been known to work any great hardship upon a defend- ant, because, notwithstanding the fact that the court takes judicial notice of the statute, if it has never been in fact enacted by the legislature, or has been illegally enacted, or not enacted in conformity with the requirements of the con- stitution, he may prove by certified copy of the journal en- tries of the House and Senate, or either, that the bill was never enacted in a constitutional manner, and therefore he is not liable for a violation of it. We have before us a very patent example of this. In the 1909 Session Laws is printed what purports to be an act of the legislature with reference to the salaries of certain officers, and the fact that it appears thus in the Session Laws would require the courts to take judicial notice that it is a law; yet the journal shows that this particular act was *defeated* instead of *passed.* Now, it is clear that anyone who might be adversely affected by this purported act might prove to the court that he was in error in his "judicial notice," and that the law had never been

adopted or enacted. So it is here. The court should in the first place take judicial notice of the fact that the law is in effect in a given county in which he is holding court, and if for any reason he is in error, or in fact the law has not been so adopted, the defendant is provided with ample means of proving such fact and showing that, as a matter of fact, he is not amenable to the local option law, for the reason that it has never been adopted in the county in which he is charged with its violation.

The judge of the court could find out this fact just as he is required to find out numerous other facts. Subd. 8 of sec. 5950 requires the court to perform a great feat. It says that courts will take judicial notice of "The laws of nature, the measure of time, and the geographical divisions and political history of the world. In all these cases the court may resort for its aid to appropriate books or documents of reference." Now, we presume it would not be any more difficult for the court, if he had to take notice of the adoption of the local option statute in a county, to resort to the records of the county to ascertain whether or not the vote had been favorable to the organization of the district than it would be to ascertain the "laws of nature . . . . and the political history of the world." At any rate, it would not be any more difficult for him than it is for the citizen who lives seventy-five or one hundred miles from the county seat, and although courts, as such, are not required to take notice of all things they know as men, still in the application of the law, they ought to be required to know what the laws are of the jurisdiction where they are administering the laws. This is the theory on which the trial judge proceeded, and we are very much inclined to sustain him in that view.

The authorities on this question are divergent. (See Joyce on Intoxicating Liquors, sec. 418; Woolen and Thornton on Intoxicating Liquors, sec. 959; note to *State v. O'Brien,* 35 Mont. 482, 90 Pac. 514, 10 Ann. Cas. 1012.) The majority of the courts seem to be against the position we are taking, and to hold to the effect that it must be alleged and proven that a local option statute has been adopted in a given county

or district by a vote of the people. Since, however, it is a case of first impression in this state and in the light of the statute, and particularly sec. 12 of the local option law, we are inclined to follow what seems to us a more rational and sensible rule and allow a trial judge to know as a court what he knows as a man and a citizen, and what the law requires every citizen to know; namely, whether the local option law has been adopted in any given county in which he is trying cases. This rule is consonant with reason and is not obnoxious to justice.

In *State v. Jordan, ante,* p. 192, 112 Pac. 1049, the state proved by the records of the county commissioners that a local option election had been held and that the law had been adopted in Lincoln county. The trial judge thereupon instructed the jury that the law was in force in that county. The defendant on appeal took the position that the court erred in instructing the jury that the law was in effect, but that the question should have been submitted to the jury as a question of fact. This court held that the trial court committed no error, and that it was proper for the court to so instruct the jury. It was suggested in the opinion in that case that "The court should determine this matter upon proof. No doubt, in the first instance, the introduction of the order of the board of county commissioners showing the canvass and declaration of the result is sufficient to authorize the court to instruct the jury that the territory embraced within a given county becomes a prohibition district on the date such result was declared," etc. The question here confronting us, however, was not involved or considered in that case, and we were not called upon to determine whether or not the court would or should take judicial notice of the adoption of the statute.

In this case the defendant was charged with aiding and abetting Lorton in making an illegal and unlawful sale of intoxicating liquors by giving a prescription to Wilkerson for a quart of whisky, and in the prescription directing for the use of the liquor that he "drink all at once." The statute requires, sec. 15 (p. 14, 1909 Sess. Laws), that a

physician giving a prescription for the use of intoxicating liquors shall state on the prescription "the name and quantity of liquor prescribed, the name of the person for whom prescribed, the day upon which the prescription was written and the direction for the use of the liquor so prescribed." The state contended on the trial that a quart of whisky is too big a dose to give any patient for any disease whatever, and that the prescription shows on its face that it was not really given for medicinal purposes but for the purpose of evading the local option law, and at the same time furnish Lorton an excuse and protection for selling the liquor to the person holding the prescription. The defendant, by way of defense, admitted that a quart was an overdose and that to have followed the instructions would have been dangerous, but that he had simply written the directions as to the use as a joke or burlesque, and that this was simply a way he had of manifesting his sense of humor. He says that in truth and fact he had given the patient specific directions as to the use of the whisky, and that he did not need a dose so large at all. The state, in order to show that this was no joke or mere manifestation of a sense of humor on the part of the defendant, introduced some five other prescriptions which had been issued by the defendant, in four of which he had given the direction "drink all at once"; in one the directions were "drink," and in another the direction was, "Use as directed at one dose." This was for a quart of whisky. It does not appear from this prescription how the purchaser of the prescription was to take the dose, but it does appear that he was to take it all at *one* dose. It also appears that the defendant was especially favorable to quart doses. The defendant objected and protested against the introduction of these other prescriptions, on the ground it was an attempt to prove other offenses against him for the purpose of prejudicing the jury in this particular case. We think that under the circumstances of this case there was no error in admitting these prescriptions. They tend very strongly to disprove defendant's theory that he wrote the prescription in this case in a spirit of levity, and they tend rather to

establish that this had become a habit with him instead of a jest, and that he was doing the same thing right along and that, therefore, this was no mistake, error or joke. The evidence was admissible to show criminal intent. (Underhill, Cr. Ev., sec. 89; note 105 Am. St. 991 et seq.)

We find no error sufficient to require a reversal of the judgment. On the contrary, we are satisfied that the conviction was properly had and that the judgment should be *affirmed*, and it is so ordered.

Sullivan, J., concurs.