MARCELLUS H. CROUSE *vs.* THE STATE OF MARYLAND.

*Ascertainment of the Will of the Voters in the matter of Local Option in Prince George's County under the Act of 1880, ch. 82—Exceptions to Evidence, in a trial for Violation of that Act—Practice under the Law allowing Appeals in Criminal Cases—Dismissal of such an Appeal.*

At the trial of the appellant, indicted for a violation of the Act of 1880, ch. 82, entitled an Act to enable the qualified voters of Prince George's County to determine by ballot whether spirituous or fermented liquors, or alcoholic bitters shall be sold in said county, the State, for the purpose of showing that the Act of 1880, ch. 82, was the law governing the sale of liquors in Prince George's County, offered in evidence the returns from the several election districts of said county, made by the judges of election to the Clerk of the Circuit Court for Prince George's County, under the provisions of sec. 2, of that Act. It also offered in evidence for the same purpose, the proclamation of the Clerk of the Circuit Court for Prince George's County, made under the authority of the same section, showing that a majority of the votes in said county had been cast against the sale, in said county, of spirituous or fermented liquors, or alcoholic bitters. It proved by the said clerk, that the proclamation, thus offered in evidence, though it purported to be a copy, was the original proclamation, issued by him from his office, and how it appeared to be certified as a copy, was duly explained. The appellant objected to this testimony; but the Court below overruled his objection, and allowed the said proclamation to be read as evidence in the case. HELD:

That this was competent evidence and was properly admitted.

The State further offered in evidence copies of the county papers containing the proclamation, together with the testimony of one of the editors touching the publication thereof. The appellant objected to this testimony, but the Court below overruled his objection, and admitted the proffered proof. HELD:

That this ruling was correct.

Crouse *vs.* The State.

The appellant, in support of his plea of not guilty, desired to show that the law had not been duly accepted by the qualified voters of the county and was not in force; and offered to prove, (by way of showing fatal irregularity in the election,) by the sheriff, that notice of said election was not posted in one or more districts; and that the poll-books of one district were not delivered at the polls of that district until one o'clock, p. m. of the day of election; and that voting in that district did not begin until that hour. The Court below refused to permit this testimony to be offered, and the appellant excepted. HELD:

That this ruling was clearly right; for until in some legitimate and conclusive way the election were declared void, or the result of it were changed, the certificate of the judges of election and the proclamation of the clerk were conclusive of the question.

Where in an appeal under the Acts of 1872, ch. 316, and 1878, ch. 40, allowing appeals in criminal cases, it appeared, that the case was tried on the 9th April, and the verdict and judgment were entered the same day, and the traverser was fined as the law required; and the exception, which had been noted at the trial, was not signed by the Court till the 21st June afterwards, and the appeal was not prayed nor affidavit made till the 25th June, it was HELD;

That the appeal must be dismissed, as the bill of exceptions should have been tendered and signed before the judgment had been entered, and as soon after the verdict as was reasonably possible; and that the failure to do this, was a waiver of the exception noted, which was not sufficient notice of an intention to appeal, and the Court below was justified in proceeding to judgment and sentence.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ROBINSON, IRVING and RITCHIE, J.

*C. C. Magruder, Jr.,* and *William H. Tuck,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant was indicted for a violation of the provisions of the Act of 1880, ch. 82. That Act is entitled, " An Act to enable the qualified voters of Prince George's County, to determine by ballot, whether spirituous or fermented liquors or alcoholic bitters shall be sold in said county." The first section of the law provides for the submission of the question, to the *registered voters of the county,* on the 27th of April, 1880, and directs that the election " shall be held in accordance with the law governing *general* elections in this State;" and further directs how, and what notice thereof the sheriff of the county shall give. The second section directs the form of the ballots, and says: " the ballots so cast, shall be carefully counted by the judges of said election, and that said judges shall make a return of said votes to the *clerk* of the Circuit Court for Prince George's County; and said clerk shall immediately make proclamation of the result of said election."

The third section of the law declares, " that if it shall be found by said returns of the judges of election, and proclamation of the clerk of the Circuit Court for said county, that a majority of the votes in said county has been cast against the sale of spirituous or fermented liquors or alcoholic bitters, that then it shall not be lawful for any person or persons, or body corporate, to sell spirituous or fermented liquors or alcoholic bitters in said county, from and after the first day of May, 1880." The fourth section fixes the penalty.

It is conceded, that the case of *Fell vs. The State,* 42 *Md.,* 83, establishes the validity of this law, if the same has been properly voted on, and accepted by the voters of Prince George's County, to whom it was to be submitted ; but the appellant contends, that it has been cer-

tified by the judges of election, and proclaimed by the clerk of the county as adopted, whereas, he insists, that by reason of the acceptance of the votes, certain districts wherein a prohibitory law already existed, and which ought not to have been received, and certain irregularities in other districts, which he contends rendered the election unfair, and an imperfect and false expression of the will of the people, the law was not actually adopted by the legal voters of the county at the election, and therefore, is not the law; and his exceptions are all to evidence by which the Court allowed the law to be proved as adopted, and the rejection of certain evidence by which he proposed to show that the election was not valid, and the law had not been accepted.

We think there was no error in any of the rulings certified in the several exceptions. In order to show that the legal formalities, required to be observed before the law should become operative, had been observed, as the statute required, the State offered evidence to prove that there had been an election; that the judges thereof had counted the votes and made return to the clerk of the Circuit Court; and that the clerk had properly proclaimed that result.

Having already offered the returns of the judges, whereby it appeared that the election had resulted in favor of the law; the State offered the clerk's proclamation. This was competent evidence, and the Court properly admitted it. It purported to be a copy, but it was proved to be the original, and how it appeared to be certified as a copy, was duly explained. It may have contained more than was necessary; but it did faithfully certify the result as certified by the canvassers, the judges of election, and if given to the public as the law required, it was a compliance with the statute. To prove that the public was, by published proclamation, informed of the result of the election, and that the law had become operative, copies of

the county papers containing the proclamation, were offered in evidence, together with the testimony of one of the editors touching the publication thereof. To this, the defendant objected; but the Court overruled the objection and admitted the proffered proof. This ruling also was, in our opinion, correct.

The traverser, in support of his plea of not guilty, desired to show that the law had not been duly accepted by the qualified voters of the county, and was not in force; and offered to prove, (by way of showing fatal irregularity in the election,) by the sheriff, that notice of the election was not posted in one or more districts; and that the poll-books of one district were not delivered at the polls of that district until one o'clock, in the afternoon of that day; and that voting, in that district, did not begin until that hour.

The Court rejected the testimony, and the correctness of the Court's ruling is presented by this third and last exception. This ruling also was clearly right. " Where the question arises collaterally, and not in a *direct proceeding* to try the title to the office, the correctness of the decision of the canvassers cannot be called in question, but must be conclusively presumed to be correct." This is a quotation from *Mr. Cooley's work on Constitutional Limitations*, 624; and the same doctrine is stated in *McCreary on Elections, sec.* 219. This is not a case of ordinary election, between rival candidates, each of whom claims to have been elected to the office sought by them; but the same rule must be applied, and for obvious reasons.

The State is prosecuting the appellant for alleged violation of one of its laws. The law was "perfect" so soon as it received the approval of the Governor, notwithstanding its operation was deferred to a particular day in the future, and was made to depend upon the will of the people, to be ascertained in a way, and at a time desig-

nated by the statute. The Legislature could have made it immediately operative, but chose to require certain things to be done, before it should become enforcible as a penal statute. The ordinary judges of election were empowered to take the votes of the registered voters of the county, for or against the law. They were authorized and directed to "carefully count the votes," and ascertain the result; and when ascertained, they were directed to certify the result to the clerk of the Circuit Court of the county, and he was directed to make proclamation of the result. If that result so ascertained and proclaimed, was in favor of the law, then from and after the first day of May, 1880, it became unlawful and punishable to do what the law prohibited. The contingency on which the law was made to depend has happened. The persons entrusted with the task of receiving and counting the votes for and against the law have certified the result in favor of the law ; and that result has been publicly proclaimed as the statute provided. The Legislature made no provision in the statute itself, for any mode of revising the work of the judges of election. The statute makes no provision for inquiring into the regularity of the election it ordered. The provisions of the Code respecting contested elections, do not embrace this case. It nowhere in the Code, appears that the inquiry sought to be made, can be made in this way. All that the Legislature has directed to be done, has been done to make the law enforcible. In criminal cases, the jury are the judges of both law and fact. If this evidence was admitted, and the jury should think the election void, by reason of the irregularities alleged, or that on making such corrections as they thought the proof warranted, the result was against the law, and it was not adopted, and for those reasons should acquit ; that verdict would only be an acquittal of that traverser, and would not *conclusively settle* the question of the legality of the election, or the correctness of the count

and certificate of it. In another case, the question might be again inquired into, and another jury might come to a different conclusion and convict. It is evident a view of the law which leads to such a result cannot be sound. A statute is stable, and there must be some way of determining certainly that it exists and operates equally. The contention of the appellant, as is seen, leads to the anomaly of a *statute* having existence or not, as the particular jury may decide. It is clear that the inquiry proposed cannot be made in this way. Until in some legitimate and conclusive way, the election has been declared void ; or the result of it has been changed, the certificate of the *judges of election*, and the proclamation of the clerk are conclusive of the question. Being a matter of great public interest we have passed upon the questions involved ; but this appeal must be dismissed. The point has not been made, but the facts patent of record induce us to take this action. The case was tried on the 9th of April, and the verdict and judgment entered the same day ; and the traverser was fined as the law required. The exception which had been noted at the trial, was not signed by the Court till the 21st of June afterward, and the appeal was not prayed and affidavit made until the 25th of June. The law for appeals in criminal cases provides that " no judgment shall be rendered against the accused, in case he shall be found guilty, until the Court of Appeals shall have determined upon the exceptions, and remanded the case to the Court below;" and intending expedition in the matter, the Court of Appeals is required to hear the appeal at the earliest practicable time. From the very nature of the case, the bill of exceptions should be tendered and signed before the judgment has been entered. The bare noting of the exception as the case progressed, is not sufficient notice to the Court of an intention to prosecute appeal. When the verdict is rendered if appeal is designed, the exceptions should be

immediately tendered, or within such reasonable time as the Court may think proper, to allow for its preparation; and when signed and the affidavit required by the statute has been made, the Court will suspend sentence. Failure to do this is a waiver of the exception noted, and the Court is justified without *such notice* of appeal to proceed to judgment and sentence. In this case, sentence had been pronounced more than two months before the exceptions were signed or affidavit for appeal was made.

*Appeal dismissed.*

(Decided 16th December, 1881.)