GEORGE J. UNDERWOOD *vs.* COUNTY COMMISSIONERS.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN AND HAMERSLEY, Js.

Chapter 117 of the Public Acts of 1889, which provides that the county
commissioners may grant liquor licenses in towns where such licenses
"can legally be granted," does not constitute them a judicial tribunal,
or by implication authorize them to try and determine, upon evidence
other than the town records, the validity of a vote upon the question
of license or no license.

[Argued January 28th—decided March 26th, 1896.]

APPLICATION for a writ of mandamus requiring the de-
fendants to inquire and determine whether the town of West-
port was a town in which spirituous and intoxicating liquors
might be sold; brought to the Superior Court in Fairfield
County and reserved by that court, *Elmer, J.,* upon an agreed
statement of facts, for the consideration and advice of this
court. *Judgment denying application advised.*

The case is sufficiently stated in the opinion.

*Stiles Judson, Jr.,* for the petitioner.

The Act of 1895 prohibits the casting or counting of any
ballot contained in an envelope on which the initials only, of
the envelope booth-tenders, have been indorsed; and this bal-
lot law should be rigorously upheld. *Talcott* v. *Philbrick,*
59 Conn., 478; *Fields* v. *Osborne,* 60 id., 549; *Phelan* v. *Walsh,*
62 id., 292; 2 Amer. & Eng. Ency. of Law, 622. The writ of
mandamus is the appropriate remedy. High's Ex. Legal
Remedies, 4; *State* v. *State Board of Canvassers,* 36 Wis.,
504; *Morgan* v. *County of Pratt,* 24 Kan., 71; *Com'rs* v. *Hunt,*
33 Ohio St., 169; *U. S.* v. *Com'rs,* 1 Iowa, 49; *Schultz* v. *Mc-*
*Leary,* 63 Tex., 93; *Cicotte* v. *County,* 59 Mich., 509; *State* v.
*Board of Freeholders,* 35 N. J. L., 219; *Hull* v. *Supervisors,*
19 John., 259; *Cochran* v. *Miller,* 74 Ala., 50; *Dane* v. *Derby,*
89 Am. Dec., 739. And when the right to exercise a discre-

tion is abused, a mandamus will lie. *Village of Glencoe* v. *The People*, 78 Ill., 590; *Virginia* v. *Rives*, 100 U. S., 313; *Pfister* v. *Board of Com'rs*, 82 Ind., 384; *Com'rs* v. *Board of Public Works*, 39 Ohio St., 633; *Nelson* v. *Edwards*, 55 Tex., 389; *Gulick* v. *New*, 14 Ind., 93; *Daniels* v. *Miller*, 8 Colo., 542; *State* v. *Lewis*, 10 Ohio St., 128; *Mobile* v. *Cleveland*, 76 Ala., 321; *Citizens Bank* v. *Wright*, 6 Ohio St., 327; *Gilchrist* v. *Collector*, 5 Hughes, 1. No possible harm can result from the construction contended for. Any final decision that the respondents may arrive at, is subject to review by the Superior Court, and ultimately by this court.

*Allan W. Paige*, for the respondents.

There is no law giving county commissioners jurisdiction to pass upon the legality or illegality of a license vote, nor can this court confer such powers by judicial decree. *State* v. *Staub*, 61 Conn., 567; *State ex rel. N. York and N. Eng. R. R. Co.* v. *Asylum St. Bridge Com.*, 63 id., 97; *Seymour* v. *Ely*, 37 id., 106; 11 Amer. & Eng. Ency. of Law, 648. The respondents have no power to disregard the vote of the town on the question of license. Until set aside or modified by the courts, the result of the vote on license must be taken as conclusive; and that result is evidenced conclusively by the town clerk's record. *People* v. *Zeyst*, 23 N. Y., 140; *Taylor* v. *Henry*, 2 Pick., 397; *Andrews* v. *Boylston*, 110 Mass., 214; *Halleck* v. *Boylston*, 117 id., 469; *Gilbert* v. *New Haven*, 40 Conn., 102; *Mayhew* v. *District of Gay Head*, 13 Allen, 129, 134; *Eddy* v. *Wilson*, 43 Vt., 362; *Stephenson* v. *Bay City*, 26 Mich., 44; *Third School District* v. *Stoughton*, 12 Met., 105. In refusing to pass upon the validity of the license vote, the respondents were in the exercise of discretionary powers, to control which mandamus will not lie. *Amer. Casualty Ins. Co.* v. *Fyler*, 60 Conn., 460; *State* v. *Staub*, *supra;* *State ex rel.* v. *Asylum St. Bridge Com.*, *supra;* *Colby* v. *Webster*, 59 Conn., 362; *Batten* v. *Dunning*, 49 id., 479; 2 Spelling on Ext. Relief, §§ 1384, 1433. The petitioner's remedy was by appeal from the refusal of the commissioners to grant him a license. *Peck*

Underwood v. County Commissioners.

v. *Booth*, 42 Conn., 271; *Hopson's Appeal*, 65, id. 145. The right of appeal is a bar to the writ of mandamus. 2 Spelling on Ex. Relief, § 1445; *State* v. *Com'rs of Baltimore*, 46 Md., 621; *Wolf* v. *Supervisors of Sheboygan County*, 29 Wis., 79. Mandamus is never the proper remedy for trying collateral questions. 2 Spelling on Ex. Relief, §§ 1386, 1440; *Brainard* v. *Staub*, 61 Conn., 570, 576; *State* v. *Cooper*, 101 N. Car. 684; *Sudbury* v. *Hurd*, 103 Mass., 543; *McGregor* v. *Balch*, 14 Vt., 436; 6 Amer. & Eng. Ency. of Law, 378. In the absence of a remedy provided by statute courts are powerless to interfere. *Caldwell* v. *Barrett*, 73 Ga., 604. The Public Acts of 1895, Chap. 267, § 7, expressly provides that in the election of persons to office, ballots contained in envelopes not indorsed with the names of the booth tenders shall be rejected. But in balloting on licenses, the Public Acts of 1895, Chap. 308, nowhere provides that ballots contained in envelopes not so indorsed shall be rejected. The duties of envelope booth-tenders under both Acts are the same; but the serious results of neglect of a technical duty are not the same. *Phelan* v. *Walsh*, 62 Conn., 296.

TORRANCE, J. This case comes here by way of reservation upon the questions raised by the plaintiff's demurrer to the return made by the respondents to the alternative writ of mandamus; and the parties have stipulated upon the record that the return shall be " treated and considered as an agreed finding of facts in the case."

The substance of the facts agreed upon may be stated as follows :—

In October, 1894, the legal voters of the town of Westport voted in favor of " license ; " while at the annual town meeting in October, 1895, they voted, if the vote is a legal one, in favor of " no license." Unless annulled by the vote of 1895, the vote of 1894 remained in full force. The vote of 1895, however, was taken by ballots contained in envelopes which were not marked by the envelope booth-tenders " with their respective names, but only with their respective initials." The ballots so contained in said envelopes were counted by

the counters appointed and sworn to count the same. And they, under their hands, delivered to the moderator a certificate in duplicate, stating that 257 votes had been cast in favor of license, and 378 votes had been cast in opposition to license. The moderator, before the adjournment of said meeting, publicly declared the result of said count, and he forthwith indorsed on said certificate in writing, signed by him, that said certificate showed the result of the official count on the ballot for "license" and "no license." One of said certificates he placed in the ballot box and sealed it up with the ballots cast and returned to that box; the other, on that or the next day, he deposited in the office of the town clerk of Westport. The record of the result of that vote made by the town clerk of Westport upon the town records, is as follows: "License—Yes, 257; License—No, 378."

In October 1895, but some time after this vote upon the license question, the plaintiff in due form made application to the respondents for a license to sell spirituous and intoxicating liquors in Westport; and they refused to act upon his application on the ground that Westport was then a "no license" town, as shown by its records, and they had no power to inquire or to determine whether the aforesaid ballots cast upon the question of "license" and "no license," were or were not valid legal ballots. The plaintiff "is a suitable person to sell such liquors," and the "place" described in his application is a suitable place for the sale of such liquors.

These are the controlling facts in the case, and upon them the plaintiff asks that a writ of mandamus shall issue to the respondents requiring them not only to exercise the ordinary duties of their office with respect to his application for a license, but also "to enquire and determine whether at said meeting held on the first Monday of October, 1895, at said Westport, said town in fact legally voted against the granting of licenses in said town, and is a town in which spirituous and intoxicating liquors may be sold."

The sole objection made by the plaintiff to the validity of the ballots in question, is the fact that they were contained

in envelopes marked with the initials, instead of the names, of the booth-tenders; and this it is claimed is contrary to the provisions of chapter 308 of the Public Acts of 1895.

The plaintiff claims that it is the duty of the respondents to try and determine the validity of the town vote, in a case like the present, just as a court would try the question in a contested election case under the provisions of a statute; and he bases his right to the writ of mandamus mainly upon that claim. If, therefore, it can be shown that no such duty is imposed on the county commissioners, the right to the writ fails.

If such a duty is imposed by law upon the county commissioners, it must be imposed by some statute, either by express words or by clear implication; for the commissioners are a special statutory tribunal, and such powers and duties as they have are conferred and imposed by statute. No claim is made that the duty in question is imposed upon them in express terms by any statute, but the claim is that it exists by implication; and this claim appears to rest mainly upon the statutory language which is here quoted, namely: "The county commissioners of each county may license . . . . suitable persons to sell or exchange spirituous and intoxicating liquors, in suitable places in those towns within their respective counties in which such licenses can be legally granted." General Statutes, § 3053, as amended by Chap. 117 of the Public Acts of 1889. The argument seems to be that inasmuch as the commissioners can grant licenses only in towns in which such licenses " can be legally granted," this by implication imposes upon them the duty of determining judicially, as a court might, whether the vote of a town for or against license in a given case, was or was not a legal, valid vote. That the language relied upon will not bear such a construction, appears evident from the language itself as well as from the character of the tribunal on which it is claimed the duty is laid, and the nature of the questions to be determined.

The language relied upon occurs in a statute the main purpose of which is to confer and impose upon the commissioners

the power and the duty to grant licenses, and the mode of exercising the power and of performing the duty is specifically pointed out; and the power and the duty are administrative and not judicial in their nature. If the legislature in this statute had intended to confer and impose upon the commissioners the judicial power and duty which the plaintiff contends for, it is reasonable to suppose that it would have defined the power and duty, and provided the mode in which they should be exercised and performed; and it has done nothing of this kind. The phrase in the statute "in those towns in their respective counties in which such licenses can be legally granted," is really equivalent to the words, "towns which have not voted against license;" and the phrase is used as descriptive of the class of towns in which licenses may be granted, and not as descriptive of a judicial duty imposed on the commissioners.

The county commissioners are not judicial but administrative tribunals, and their powers and duties are almost exclusively administrative and not judicial; *Groton and Ledyard* v. *Hurlburt*, 22 Conn., 178; *Hopson's Appeal*, 65 id., 140; and the intent of the legislature to impose upon them the duty here claimed ought not to be inferred from language of doubtful import, or which is fairly susceptible of a different construction.

The questions involved in determining, upon evidence extrinsic to the records of the town, whether a certain vote of the town was or was not a valid legal vote, are judicial questions, depending upon the construction of statutes, largely; and they are often difficult and intricate questions, which can only be fully and effectively settled by a tribunal possessing full judicial powers. The effective performance of such a duty requires a settled mode of procedure, upon written statement or complaint setting up the facts to be investigated, the power to compel witnesses to appear and give testimony, and the power to open and examine ballot boxes if necessary.

On the whole, from the language of the statute, as well as from the nature of this statutory tribunal and the nature of the questions which the plaintiff asks it to determine, it is

clear that the duty in question is not imposed upon the county commissioners. In the performance of their duties they were not bound to look beyond the records of the town, in order to determine whether they would or would not grant licenses therein; and the town records in this case justified them in refusing to consider the plaintiff's application for a license.

In coming to the conclusion that the duty contended for by the plaintiff is not imposed on the county commissioners, it is assumed, without deciding the matter either way, that the ballots in question here, were, as claimed by the plaintiff, illegal and ought not to have been counted. The plaintiff says that unless the county commissioners can pass upon the validity of the vote in question, there is no way in which its validity can be determined; that question however is not before this court now, and no opinion is expressed upon it.

The Superior Court is advised to deny the application for a peremptory writ of mandamus.

In this opinion the other judges concurred.