# JAY *v.* O'DONNELL.

[No. 22,123. Filed April 26, 1912. Rehearing denied July 5, 1912.]

1. COUNTIES.—*Board of Commissioners.—Appeals.*—Under §6021 Burns 1908, §5772 R. S. 1881, providing for appeals generally from any decision of the board of county commissioners, and under §22 of the saloon regulation act of 1911 (Acts 1911 p. 244), providing for appeals in proceedings had before the board under that act, the decision from which the appeal is taken must be final in its nature and must end the proceeding before that tribunal. p. 285.

2. INTOXICATING LIQUORS. — *Application for License. — Judgment Sustaining Remonstrance.—Appeal.*—The judgment of the board of county commissioners, before whom an application for license to sell intoxicating liquors was pending, sustaining a remonstrance against the granting of such license, and that it had no jurisdiction of the proceeding, was final in its nature and an appeal therefrom was authorized. p. 285.

3. INTOXICATING LIQUORS.—*Application for License.—Appeal.—Statutes.*—The act of 1911, p. 244, §22, expressly authorizes an appeal from a decision of the board of commissioners in a proceeding to obtain a license to sell intoxicating liquors as a beverage. p. 285.

4. MANDAMUS.—*Right to Mandamus.—Remedy by Appeal.*—Mandamus will not lie where there is an adequate remedy by appeal. p. 286.

5. COUNTIES.—*Board of Commissioners.—Judicial Power.—Constitutional Law.*—At the time the present Constitution took effect, boards of commissioners had judicial powers, and they are recognized as belonging to the judicial department of the state government by the provisions of article 6, §10, of the Constitution authorizing the legislature to confer upon them powers of a local, administrative character. p. 288.

6. INTOXICATING LIQUORS.—*Local Option Elections.—Duty of Election Commissioners.*—Under the local option law approved February 3, 1911 (Acts 1911 p. 8), §5 of which provides for a board of election commissioners who are required to meet on the day following the holding of an election and canvass the returns thereof and certify the result to the board of commissioners, and §7 of which requires such certificate to be filed with the auditor of the county not later than five days after the election, and provides that if a majority of the legal votes cast shall be in favor of prohibiting the sale of intoxicating liquors, it shall thereafter be unlawful for the board of commissioners or any court to grant a license for the sale of such liquor, and that the board of com-

missioners, at its next regular meeting after the filing of the certificate of the election commissioners, shall enter an order declaring the result of said election, and the local option law of March 4, 1911 (Acts 1911 p. 363), which substantially reënacted those provisions, the duties of the election commissioners are purely ministerial and they have no power to hear oral testimony and change the result of the election as shown by the tally sheets and certificates of the inspectors and judges. p. 289.

7.  INTOXICATING LIQUORS.—*Local Option Elections.*—*Determination of Result.*—*Power of Board of Commissioners.*—Under the provisions of the local option law approved February 3, 1911 (Acts 1911 p. 8), and the act of March 4, 1911 (Acts 1911 p. 363), which substantially reënacted the provisions of the former act, it is the majority of the "legal votes" cast at a local option election that determined whether the board of commissioners shall thereafter have jurisdiction to grant a license to sell intoxicating liquors, and not the majority returned by the election commissioners and filed with the county auditor, so that the board of commissioners has the power to go behind the returns filed by the election commissioners to inquire into the truth of the same, and to entertain a contest of the result of such election, although said acts do not in express terms confer such power. p. 291.

8.  STATUTES.—*Construction.*—*Reënactment of Statute.*—*Adoption of Construction.*—When a statute, or a clause or provision thereof, has been construed by the court of last resort of the State, and the same is substantially reënacted, the legislature is presumed to have adopted such construction, unless the contrary is clearly shown by the language of the act. p. 294.

9.  STATUTES.—*Construction.*—*Statute Applying Settled Procedure to New Subject-Matter.*—*Local Option Law.*—The presumption that the judicial construction placed on a statute is adopted by the legislature in the reënactment of such statute, is also indulged in case of a statute that applies a settled procedure to a new subject-matter; and, the provisions of the acts for the purchase of toll roads, for the construction of free gravel roads, for aid to railroads and concerning elections held thereunder, having been substantially reënacted in the local option laws of 1911 (Acts 1911 p. 8, Acts 1911 p. 363), the construction given to said acts and the procedure thereunder with regard to the power of the board of commissioners to go behind the return of the vote made by the election officers, and to entertain a contest of the election, was adopted by the legislature in passing the local option laws. p. 294.

10. INTOXICATING LIQUORS.—*Local Option Elections.*—*Determination of Result.*—*Collateral Attack.*—The declaration by the board of county commissioners of the result of a local option election is

conclusive until set aside or vacated in some way authorized by law, and is not subject to collateral attack. p. 295.

11. INTOXICATING LIQUORS.—*Local Option Elections.—Determination of Result.—Effect of Failure to File Certificate of Election or Failure to Enter Order Declaring Result.*—Neither the failure of the election commissioners to file the certificate as to the result of a local option election, nor the failure of the board of county commissioners to enter an order declaring the result thereof, will defeat the result of such election. p. 296.

12. INTOXICATING LIQUORS.—*Local Option Elections.—Informal Declaration of Result.*—The order entered by the board of county commissioners, declaring the result of a local option election. is the legal proof of the result and conclusive against collateral attack, even though such order is informal. p. 296.

13. EVIDENCE.—*Judicial Notice.—Result of Local Option Elections.*—Under the local option law of 1911 (Acts 1911 p. 8, Acts 1911 p. 303) the board of county commissioners is governed by the result of a local option election as declared by it and entered on its own records, and, in proceedings to obtain a liquor license, where the result of such election has been declared as prohibiting the sale of intoxicating liquor, not only such board, but also the court on appeal from such board, must take judicial notice of the result of such election and that there is no jurisdiction to grant such license. p. 297.

14. COURTS.—*Jurisdiction.—Appeal.*—When a tribunal has no jurisdiction of a proceeding, the court to which the same is appealed has no jurisdiction. p. 302.

From Howard Circuit Court, *William C. Purdum*, Judge.

Application by Michael O'Donnell for license to sell intoxicating liquors, against which Gilbert D. Jay remonstrated. From a judgment granting the license, the remonstrant appeals. *Reversed.*

*Harness & Moon, Bell, Kirkpatrick & Voorhis*, for appellant.

*Rabb & Mahoney*, for appellee.

MONKS, J.—Appellee applied to the Board of Commissioners of the County of Howard for a license to sell intoxicating liquors as a beverage in the city of Kokomo. Appellant filed a remonstrance, which alleged, in brief, that by order of said board of commissioners a local option election had been held in said city of Kokomo, under the act approved February

3, 1911 (Acts 1911 p. 8), and that a majority of the legal votes cast in said city at said election was in favor of prohibiting the sale of intoxicating liquors as a beverage in said city, and that said board of commissioners so declared the result of said election. Said commissioners made an order adjudging that said remonstrance was sufficient, and that the same be sustained, and adjudged that the board had no jurisdiction to act on appellee's said petition. From this decision of the board, appellee appealed to the court below. The cause was submitted to the court without a jury, and the court found for appellee, and over a motion for a new trial rendered judgment granting him a license to sell intoxicating liquor as a beverage.

It is first insisted by appellant that appeals only lie from final judgments of the boards of commissioners, and that no final judgment was rendered by the board of commissioners in this cause, and that appellee's remedy was not by appeal from the action of the board, but by mandamus to compel the board to render final judgment in said proceeding.

While our statutes (§6021 Burns 1908, §5772 R. S. 1881; Acts 1911 p. 244, §22) provide that an appeal from any decision of the board of commissioners may be taken, it has

1. been held uniformly that the same must be final in its nature, and that it must end the proceeding before that tribunal. *Good* v. *Burke* (1906), 167 Ind. 462, 467, 77 N. E. 1080, and cases cited; *Walb* v. *Eshelman* (1911), 176 Ind. 253, 94 N. E. 566, 570.

It is evident that the judgment of said board, that the remonstrance of appellant was sufficient and that the same be sustained, and that it had no jurisdiction of the pro-

2. ceeding, put an end to the proceeding before it. Said judgment was therefore final in its nature, and an appeal therefrom was authorized. Acts 1911 p. 244; §6021, *supra.*

Section 22, Acts 1911 p. 244 expressly authorizes an

3. appeal from a decision of the board of commissioners

in a proceeding before said board to obtain a license to sell intoxicating liquors as a beverage. When there is an adequate remedy by appeal, mandamus will not lie. *Board, etc.,* v. *State, ex rel.* (1909), 173 Ind. 52, 55, 88 N. E. 673, 89 N. E. 367; *Couch* v. *State, ex rel.* (1907), 169 Ind. 269, 82 N. E. 457, 124 Am. St. 221; *State, ex rel.,* v. *State Board, etc.* (1910), 173 Ind. 706, 709, 91 N. E. 338.

It appears from the record that the Board of Commissioners of the County of Howard, at its February term, 1911, made an order on a petition to said board under the local option law, approved February 3, 1911 (Acts 1911 p. 8), that an election be held under the provisions of said law, to determine whether "the sale of intoxicating liquors as a beverage should be prohibited" within the limits of the city of Kokomo in said county; that according to the tally sheets kept by the election clerks and the certificates of the votes made by the judges and inspectors of election of the various precincts in said city and filed with the county auditor, there was a majority of twenty-eight votes cast and counted in favor of prohibiting the sale of intoxicating liquors in said city; that at the meeting of the election commissioners held under said act it was claimed that the tally sheet and certificate of the vote signed by the inspectors and judges of the third precinct of the fourth ward in said city, showing 110 votes in favor of prohibiting the sale of intoxicating liquors as a beverage in said city and seventy-four votes against prohibiting such sale, were erroneous; that on oral testimony said election commissioners found that there were cast in said precinct seventy-four votes for prohibiting the sale of intoxicating liquors as a beverage in said city and 110 votes against prohibiting such sale; that the board of election commissioners instead of placing in their certificate the number of votes cast in said precinct, as shown by the returns of the election officers of said precinct, placed therein the number of votes cast for and against prohibiting the sale of intoxicating

liquors as a beverage in said city, as shown by the finding of said election commissioners; that said certificate as so made out, signed and filed showed a majority of forty-four votes against prohibiting the sale of intoxicating liquors as a beverage in said city; that at the next regular session of the board of commissioners of said county, after the certificate of said election commissioners was filed with the auditor of said county, Gilbert D. Jay, appellant in this proceeding, filed a paper charging in effect, that many of the electors of said city were bribed to vote against prohibiting the sale of intoxicating liquors as a beverage in said city, and that they did so vote, and that a large number of nonresidents of said city voted against prohibiting such sales of intoxicating liquors; that by reason of said facts a majority of the legal votes cast at said election was in favor of prohibiting the sale of intoxicating liquor as a beverage in said city, and praying that the board so find, order and adjudge.

One McCutcheon, a person interested in opposing the prohibition of the sale of liquor in said city, appeared before said board of commissioners and answered, denying the statement of said Jay, and also filed a counter-statement, charging that many illegal votes were cast and counted at said election in favor of prohibiting such sale in said city, and that a majority of the legal votes cast was against prohibiting such sales, and praying that the board so find, order and adjudge.

Said board of commissioners thereupon heard evidence for five days, and heard argument of counsel, and made a finding and order in said cause, wherein it was found, adjudged and declared that the result of said election was and is that the majority of the legal votes cast at said election was in favor of prohibiting the sale of intoxicating liquors as a beverage in said city.

The court below held that the Board of Commissioners of the County of Howard had no power to hear or to determine the question whether a majority of the legal votes cast was

cast for or against prohibiting the sale of intoxicating liquors as a beverage in said city, and that the certificate of the election commissioners as to the result of said election, filed with the county auditor, was conclusive, and the only evidence of the true result of said election.

Appellant contends (1) that under the local option law the duties of the election commissioners are purely ministerial, that they have no power to decide as to the truth of the returns made to them by the election officers of the different precincts, that they can only perform the act of tabulating the votes of said precincts as they come to them and make return thereof to the board of county commissioners; (2) that the board of commissioners has the power and jurisdiction to go behind said return, to investigate, hear evidence and declare the result of the election according to "a majority of the legal votes cast"; (3) that such declaration of the result cannot be collaterally attacked.

Appellee insists that "the board of commissioners is primarily an administrative body; that its duties in local option election proceedings are purely ministerial; that as the local option law does not in express terms confer on such board power and jurisdiction to entertain a contest of the election held under it, or to determine in any manner, either from the return of the election commissioners or from extrinsic evidence, its result, the only power of said board of commissioners is to declare the result of the election as shown by the certificate of the election commissioners" filed with the county auditor, which, so far as this case is concerned, was against prohibiting the sale of intoxicating liquors as a beverage in said city of Kokomo. Boards of commissioners at the time the present Constitution took effect had judicial powers—the powers of courts. 1 Elliott, Gen. Prac. §197; State, ex rel., v. Board, etc. (1885), 101 Ind. 69, 71, 72; Board, etc., v. Conner (1900), 155 Ind. 484, 58 N. E. 828; Strayer v. Taylor (1904), 163 Ind. 230, 69 N. E. 145.

Article 3, §1, of the Constitution provides: "The powers

of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided." Such boards of commissioners, being courts, belonged to the judicial department of the state government, and the Constitution recognized that fact by providing in article 6, §10, that "the General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character." No such provision would have been necessary if boards of commissioners belonged to the "executive, including the administrative," department of the state government. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, 618, 619, 85 N. E. 513.

Under the local option law (Acts 1911 p. 8) the proceeding for a local option election is brought before the board of commissioners. Section five of said act provides for a 6. "board of election commissioners," consisting of "the county auditor and two resident freeholders of the territory in which such election is to be held, one known to be in favor of prohibiting the sale of intoxicating liquors as a beverage in such territory and one opposed to prohibiting such sale therein, both to be appointed by the board of commissioners of such county at the time of ordering the election." On the day after said election said election commissioners are required to meet at the auditor's office and "canvass the returns of said election and certify the result to the board of commissioners of said county." Section seven of said act requires that said certificate of the election commissioners be filed with the auditor of said county not later than five days after the election. It is provided in said section that "if a majority of the legal votes cast at said election shall be in favor of prohibiting the sale of intoxicating liquors as

a beverage in the territory in which said election was held under this act, it shall thereafter be unlawful for said commissioners or any court to grant a license to any person for the sale of intoxicating liquors in such territory, and the board of commissioners thereafter shall have no power or jurisdiction to hear or consider applications for license to sell intoxicating liquors nor to grant such license to any person in such territory until at a subsequent election held under this act a majority of the legal voters of such territory voting at such subsequent election shall vote against prohibiting the sale of intoxicating liquors as a beverage.'' Said section also provides that at the next regular meeting of the board of commissioners of said county after said certificate of the election commissioners has been filed with the county auditor, said board shall enter an order declaring the result of said election. These provisions of the local option law approved February 3, 1911 (Acts 1911 p. 8), were substantially re-enacted in the local option law of March 4, 1911 (Acts 1911 p. 363).

It is evident that the duties of the election commissioners in canvassing the returns of said election and certifying the result to the board of county commissioners are purely ministerial. They perform the act of tabulating the votes of the different precincts as returned to them, and have no power to hear evidence or determine any question as to the validity of the election held or the votes cast, or to change such returns. *Kunkle* v. *Coleman* (1910), 174 Ind. 315, 321, 92 N. E. 61, and authorities cited; 10 Am. and Eng. Ency. Law (2d ed.) 746; 15 Cyc. 379-382. It follows that said election commissioners had no power to hear oral testimony and change the result of the election in the third precinct of the fourth ward of said city as shown by the tally sheet and certificate of the inspector and judges of said precinct, but that they should have canvassed and certified the vote as shown by the return of the election officers of said precinct.

For many years, in proceedings before the board of coun-

ty commissioners for the construction of free gravel roads and for the purchase of toll roads (Acts 1889 p. 276, 7. §§6953-6959 Burns 1894; Acts 1893 p. 196, §§6924-6934 Burns 1894; Acts 1895 p. 143, §§6924-6933 Burns Supp. 1897; Acts 1905 p. 521, Acts 1905 p. 489, Acts 1907 p. 68, Acts 1907 p. 137, §§7711-7724 Burns 1908), and to aid in the construction of railroads by taking stock in and making donations to the same (Acts 1869 p. 97, §§5340-5357 Burns 1894, §§4045-4062 R. S. 1881, and §§4045-4062 Horner 1897, §§5464-5519 Burns 1908), the power of the board to purchase such toll road or to order the construction of said free gravel road or to aid in the construction of railroads has been made by law to depend on a majority of the legal votes cast at an election being in favor thereof.

There was no provision in any of said acts expressly giving any power to contest any election held under any of said acts, nor was there any provision expressly giving to the election officers, board of canvassers or board of county commissioners any power to hear evidence or purge the polls, nor was any express provision made for any adversary proceedings or the hearing of any evidence other than the statement of the vote filed with the county auditor in such cases.

In cases under such acts, as here, it was contended that the board of commissioners had no power to go behind the vote as returned by the election officers and inquire into the truth of the same, but this court held that the board of commissioners has such power and also the power to hear and determine a contest of such election and any objections thereto and adjudge the number of legal votes cast, and the result of said election as determined by the legal votes cast. *Board, etc., v. Conner, supra,* and cases cited; *Strebin* v. *Lavengood* (1904), 163 Ind. 478, 71 N. E. 494.

In *Goddard* v. *Stockman* (1881), 74 Ind. 400, the railroad aid act was involved, and the contention was that the board of commissioners had no power to go behind the return of the election filed with the county auditor, and this court, at

page 408, said: "The law for contesting elections is not applicable to elections such as this was, but, nevertheless, there was a practical way open for making an efficient contest. The law is not, that, if a majority of votes returned be in favor of the appropriation, the board shall grant the prayer of the petition, but, if a majority of the votes cast shall be in favor of such railroad appropriation, the county commissioners, at their regular ensuing June session, shall . grant the petition. This means the legal votes cast, and the board has the right to go behind the canvass of the vote and inquire into the truth of the return made; and any individual interested may appear before them and contest the result of the election."

In *Board, etc.,* v. *Conner, supra,* the act for the construction of free gravel roads was involved, and the contention was, as in this case, that the board of commissioners was bound by the vote as certified by the election officers. This court at page 492, said: "It is evident from an examination of the provisions of said act of 1893, as amended by the act of 1895, concerning the construction of free gravel roads, that, under said act, as under the act of 1869, authorizing counties and townships to aid in the construction of railroads, it is the majority of the legal votes cast at the election that controls the action of the board of commissioners, and not the majority returned by the officers of the election. It is clear, therefore, from what was said in the case of *Goddard* v. *Stockman* [1881], 74 Ind. 400, that the board of commissioners of Monroe county had the right to go behind the vote as returned by the election officers, and inquire into the truth of the same, and that appellee had the right to appear before said board, at the proper time, and contest the result of said election as returned by the officers thereof."

If in the local option law, instead of providing for an election to determine once for all whether the board of commissioners and courts should be deprived of jurisdiction to grant license to sell intoxicating liquors as a beverage in the terri-

tory in which the election is held, the legislature had provided for an election to determine in each proceeding for a license whether the board should be deprived of jurisdiction to grant such license, there could be no question of the power of the board of commissioners in such proceeding to hear and determine a contest of such election in like manner as in elections held under the free gravel road act and the railroad aid act. Does the fact that the election is held once for all, instead of in each proceeding to obtain a license, change or affect the power and authority of the board of commissioners in determining and declaring the result thereof? In either case, such declaration determines whether the board and courts have jurisdiction to grant a license. If the power of the board to go behind the returns would exist where there is an election in each proceeding to obtain a license, it certainly exists where, as under the local option law, it is held once for all. In the latter case, as it would be in the former, and as it is under the free gravel road and railroad aid acts, all those affected by the election and the result thereof are brought into the proceeding by the notice given of the election, and they remain in and are bound to take notice of all steps taken in the proceeding until it is disposed of by the board of commissioners declaring the result of the election.

Under the local option law it is the majority of the "legal votes" cast at the election that determines whether the board of county commissioners and courts shall have jurisdiction to grant a license to any person to sell intoxicating liquors as a beverage within the territory where the election is held, and not the majority returned by the election commissioners and filed with the county auditor. Acts 1911 p. 12, §7. It is evident that the Board of Commissioners of the County of Howard had the power to go behind the returns of the election commissioners made to said board and filed with the county auditor, and inquire into the truth of the same, and that appellant had the right to appear before said board at the proper time and contest the result of said election, as

returned by said election commissioners, and present any and all questions necessary to determine the number of legal votes cast at said election, in like manner as in free gravel road and railroad aid elections.

Moreover, it is a settled rule of statutory construction that when a statute or a clause or provision thereof has been construed by the court of last resort of a state, and the
8.   same is substantially reënacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the act. *Board, etc.,* v. *Conner, supra,* and authorities cited; *Jarvis* v. *Hitch* (1903), 161 Ind. 217, 219, 224, 67 N. E. 1057, and authorities cited; *State, ex rel.,* v. *Board, etc.* (1906), 166 Ind. 162, 188, 189, 76 N. E. 986, and authorities cited; *State* v. *Dorsey* (1906), 167 Ind. 199, 203, 78 N. E. 843, and cases cited; *Cronin* v. *Zimmerman* (1907), 169 Ind. 75, 76, 81 N. E. 1083, and cases cited; *McIntyre* v. *State* (1908), 170 Ind. 163-165, 83 N. E. 1005, and authorities cited; *Smith* v. *Biesiada* (1910), 174 Ind. 134, 137, 90 N. E. 1009, and cases cited. "It is not necessary that a statute should have been literally reënacted to authorize the presumption that it was reënacted in the light of the settled judicial construction that the prior enactment had
9.   received. The presumption has been indulged in case of a statute that applies a settled procedure to a new subject-matter (*Board, etc.,* v. *Conner* [1900], 155 Ind. 484 [58 N. E. 828]) ; and in *Interstate Commerce Com.* v. *Baltimore, etc., R. Co.* [1892], 145 U. S. 263, 284, 36 L. Ed. 699, 12 Sup. Ct. 844, it was held that it should be presumed that congress, by the use of the words 'undue preference,' had in mind the construction given those words in a statute upon the same subject by the English courts." *Desgain* v. *Wessner* (1903), 161 Ind. 205, 206, 67 N. E. 991.

The provisions of the acts for the purchase of toll roads, for the construction of free gravel roads, and for aid to railroads, concerning the elections held thereunder and certifying the result to the board of county commissioners, and the

power of the board to determine the number of legal votes cast for or against the proposition submitted to the voters, have been substantially reënacted in the local option laws of 1911. It follows, therefore, that the construction given to said acts and the procedure thereunder, settled in *Goddard* v. *Stockman, supra,* and *Board, etc.,* v. *Conner, supra,* and other cases decided by this court before said local option laws pere passed in 1911, in regard to the power of the board of commissioners to go behind the return of the vote made by the election officers, and the right of any party having an interest to appear and contest the election, was adopted by the legislature in passing said local option laws.

The declaration of the result of a local option election by the tribunal authorized by law to make the same is conclusive as to the result of such election until set aside or vacated in some way authorized by law, and is not subject to collateral attack. This is true without regard to whether the declaration is a judicial or administrative act, or is made by a judicial or administrative body. *Thomas* v. *Abbott* (1895), 105 Mich. 687, 692, 693, 63 N. W. 984; *Conrad* v. *State* (1893), 70 Miss. 733, 12 South. 851; *State* v. *O'Brien* (1907), 35 Mont. 482, 499, 500, 90 Pac. 514, 10 Ann. Cas. 1006, and cases cited; *Crouse* v. *State* (1881), 57 Md. 327, 331-333; *State, ex rel.,* v. *Village Council, etc.* (1910), 112 Minn. 365, 368, 369, 128 N. W. 295; *State* v. *Emery* (1887), 98 N. C. 768, 3 S. E. 810; *State* v. *Cooper* (1888), 101 N. C. 684, 687, 688, 8 S. E. 134; *People, ex rel.,* v. *Hamilton* (1899), 58 N. Y. Supp. 959, 27 Misc. 360; *People, ex rel.,* v. *Hasbrouck* (1897), 47 N. Y. Supp. 109, 21 Misc. 188; *Combs* v. *State* (1888), 81 Ga. 780, 8 S. E. 318; *State* v. *Gamma* (1910), 149 Mo. App. 694, 700, 704, 129 S. W. 734; *Underwood* v. *County Commissioners* (1896), 67 Conn. 411, 35 Atl. 274; *Block* v. *Commissioners* (1878), 99 U. S. 686, 696, 25 L. Ed. 491; 23 Cyc. 101 (d) ; Black, Intox. Liquors §103. See, also, *Evansville, etc., R. Co.* v. *City of Evansville* (1860), 15 Ind. 395, 419, 423, and cases cited; *City of Indian-*

*apolis* v. *Consumers Gas Trust Co.* (1895), 140 Ind. 246, 253, 254, 39 N. E. 943, and cases cited; VanFleet, Collat. Attack §629. It is held that this is the rule even though such election cannot be contested. *State* v. *Gamma, supra.*

As the local option law under which said election was held authorized the board of commissioners of Howard county to declare the result of said election, the declaration of said board, that the same was in favor of prohibiting the sale of intoxicating liquors as a beverage in the city of Kokomo, was and is, therefore, conclusive against the collateral attack made in this case.

Neither the failure to file with the county auditor a certificate of the election commissioners as to the result of the election, nor the failure of the board of commissioners to

11. enter an order declaring the result thereof will defeat the result of the election, because the result thereof may be ascertained by other methods, if such certificate is not filed with the auditor, or the board has failed to declare the result. *Kunkle* v. *Coleman, supra.*

In *Gordon* v. *Corning* (1910), 174 Ind. 337, 341, 92 N. E. 59, this court, speaking of the effect on the jurisdiction of the board of commissioners of a majority of the votes being in favor of prohibiting the sale of intoxicating liquors as a beverage under the local option law of 1908 and the force and effect of the return of the election commissioners, said: "An adverse vote shall devest jurisdiction unless the *prima facie* case made by the return is overthrown," thus recognizing the fact that the same might be overthrown by a direct attack before the board of commissioners. But where

12. the board of commissioners declares the result of the election, the same is conclusive against collateral attack. Even though the order entered by the board of commissioners, declaring the result of the election, is informal, the same is the legal proof of the result. *Kunkle* v. *Coleman, supra.*

It is insisted by appellant that the courts are bound to

take judicial notice of the result of local option elections, as declared by the boards of commissioners under the local option laws of this State, and that as the Board of Commissioners of the County of Howard had declared that the result of the election was that the sale of intoxicating liquors as a beverage in the city of Kokomo was prohibited, the court below was bound to take notice thereof.

The local option law of Pennsylvania, enacted in 1872, provided that a return of the result of local option elections should be made by the election officers to the clerk of the Court of Quarter Sessions of the peace of the proper county, duly certified as required by law, which certificate should be laid before the judges of said court at its first meeting after said election, and should be filed with the other records of the court. Said local option law also provided that "when it shall appear from the election returns that there is a majority against license it shall not be lawful for any court or board of license commissioners to issue any license for the sale of intoxicating liquors," etc. In *Rauch* v. *Commonwealth* (1875), 78 Pa. St. 490, it was insisted that the courts of that state were not bound to take judicial notice of the result of an election held under said statute. The court said on page 493: "The act of 1872 is a general law, applicable to the whole state; the election under it is to be governed by the general election laws; the result is to be duly certified and returned to the clerk of the Court of Quarter Sessions; the certificate must be laid before the judges of the Court of Quarter Sessions at the first meeting of the court after the election, and filed of record, and the judges are then to be governed by the result of the vote upon the question of granting licenses, and must, therefore, take judicial cognizance of the right to have a license. Thus, by the very terms of the law, the court is bound to know judicially whether the treasurer could grant a valid brewers' license after the result of the vote had been judicially ascertained. Besides, on general principles, a court will take judicial notice of many

things which are public in their effects or relations, as seen in Mr. Greenleaf's Treatise on Evidence, §4, vol. 1. [1 Greenleaf, Evidence §4.] 'In fine (says he) courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. §6 Chap. 2.' [1 Greenleaf, Evidence §6.]''

In *Mitchell* v. *State* (1911), 115 Md. 360, 80 Atl. 1020, 1023, the law provided for an election to be held ''for the purpose of determining the question as to whether or not any license shall be granted in Worcester County for the sale therein of'' intoxicating liquors, and that ''if it shall appear from the returns of said election that a majority of the votes cast were against the sale of intoxicating liquor,'' that the supervisors of election give notice of such returns in one or more newspapers,'' etc., and that ''it shall not be lawful for any license to sell'' intoxicating liquors ''to be issued in'' said county, etc. The court held that whether said local option act was adopted and operating in said county was a preliminary question for the court and not for the jury, that the court was bound to take judicial notice of its adoption, citing *Slymer* v. *State* (1884), 62 Md. 237; *Mackin* v. *State* (1884), 62 Md. 244; *Crouse* v. *State* (1881), 57 Md. 327, and *Jones* v. *State* (1887), 67 Md. 256, 10 Atl. 216.

In Virginia the law provided for submitting to the voters of the ''several counties, corporations and magisterial districts'' the question of whether or not license for the sale of intoxicating liquors should be issued. Said law provided that the official canvassers should canvass the returns of the election officers and certify the number of votes cast for and against license, a copy of such certificate ''in either case to be laid before the county or corporation court, as the case may be, at its next term.'' It was also provided that ''if a majority of votes was against license, that no license shall be granted for the sale of intoxicating liquors.'' In *Savage* v. *Commonwealth* (1888), 84 Va. 582, 5 S. E. 563, and in *Thom-*

*as* v. *Commonwealth* (1893), 90 Va. 92, 94, 17 S. E. 788, it
was held that the courts were bound to take judicial notice of
the result of such elections.

In *Combs* v. *State, supra,* it was insisted that the question
of the result of a local option election is a question of
fact to be determined by the jury. The court said on
page 783: ''It provides further that this notice shall
be entered on the minutes of the superior court, and it shall
be competent evidence to show when the act took effect.
'Courts are created to administer and enforce the law.
Therefore they do and must take judicial cognizance of all
laws. Whether the law was in existence is for them to say,
just as fully as it rests with them to say whether the indict-
ment is good or bad, or that the evidence to prove the offence
alleged is legally admissible or otherwise. To the courts
alone belongs the right of saying whether a statute is in force
or not.' *Slymer* v. *State* [1884], 62 Md. 237. The law itself
having provided that the result of the election should be
placed upon the minutes of the superior court, and that that
entry should be competent evidence to show when the act
went into effect, and the judge below having these minutes
before him, there was no error in his reading from the min-
utes and instructing the jury, as a matter of law, as to when
the act went into effect. It is the duty of the judge to know
the law, especially to know the law of the counties in his
own circuit. If he should be ignorant of the local law en-
acted by the legislature for any county in his circuit, or any
county where he may preside, it would be his duty to inform
himself of what the law is. If the act of the legislature does
not inform him as to when it went into effect, then he can
look to the means provided by this act to inform himself.
If the act provides that the clerk shall announce the result
of the election and place it on the minutes of the court, he
may look to that. If the act provides, as many of them do,
that the return should be made to the ordinary of the county

and he should issue his proclamation declaring the result, then he may look to the proclamation, or have it introduced, if necessary, in evidence before him, but not before the jury. The proclamation of the clerk or ordinary is conclusive that the law has been accepted by the people, and has become effectual as a law. It being conclusive for this purpose, there would be no use or propriety in submitting the matter to a jury, because the defendant would not be allowed to controvert it, and it would be useless to submit any evidence in a criminal case to the jury which the defendant would not be allowed to controvert.''

In *Oglesby* v. *State* (1904), 121 Ga. 602, 49 S. E. 706, it was held that the courts will take judicial notice of the result of a prohibition election, whether the same was held under the general local option liquor law or a local act providing for such election, citing *Woodard* v. *State* (1897), 103 Ga. 496, 498, 30 S. E. 522.

In *Gay* v. *City of Eugene* (1909), 53 Or. 289, 295, 100 Pac. 306, 308, 18 Ann. Cas. 188, the court cited *Combs* v. *State, supra,* with approval, for the reason that the result of the local option election was required to be made a matter of record in the court originally having jurisdiction of the cause involving the inquiry.

Where a public law provides for its acceptance by the votes of a city, the courts take judicial notice of its acceptance at a special election held in accordance with its provisions. *Prince* v. *Crocker* (1896), 166 Mass. 347, 358, 44 N. E. 446, 32 L. R. A. 610. See, also, *State, ex rel.,* v. *Stearns* (1898), 72 Minn. 200, 219, 75 N. W. 210, and authorities cited; *Prohibitory-Amendment Cases* (1881), 24 Kan. 700, 715; *Brown* v. *Piper* (1875), 91 U. S. 37, 42, 23 L. Ed. 200; *Gardner* v. *Collector* (1867), 6 Wall. 499, 18 L. Ed. 890; *Evans* v. *Browne* (1869), 30 Ind. 514, 519, 521, 95 Am. Dec. 710; *Sherman* v. *Story* (1866), 30 Cal. 253 89 Am. Dec. 93; *State, ex rel.,* v. *Wheeler* (1909), 172 Ind. 578, 582 583, 89 N. E. 1, 19 Ann. Cas. 834, and case cited.

In states where the result of local option elections must be proved, it is held that such proof is for the court and not for the jury, and if the court finds that such law has been adopted, it is proper to instruct the jury that such law is in force in the territory in which the election was held. *State* v. *O'Brien, supra; State* v. *Brown* (1908), 130 Mo. App. 214, 109 S. W. 99; *State* v. *Gamma, supra; Sebastian* v. *State* (1903), 44 Tex. Crim. 508, 72 S. W. 849; *Cantwell* v. *State* (1905), 47 Tex. Crim. 511, 85 S. W. 19; *Neal* v. *State* (1907), 51 Tex. Crim. 513, 102 S. W. 1139. See, also, *Combs* v. *State, supra,* and cases cited.

The cases cited, in which it is held that the court is bound to take judicial notice of the result of local option elections, are criminal cases. There are much stronger reasons for holding that courts must take judicial notice of the result of local option elections in proceedings to obtain license to sell intoxicating liquors as a beverage than in criminal prosecutions.

If a majority of the legal votes cast at said election should be in favor of prohibiting the sale of intoxicating liquors as a beverage in said territory, the local option law provides that "it shall thereafter be unlawful for said commissioners or any court to grant a license to any person for the sale of intoxicating liquors in such territory," etc. Under such circumstances neither the board of commissioners nor the courts on appeal have jurisdiction of proceedings to obtain license to sell intoxicating liquor in such territory.

Under the local option law the return of the result of the local option election made by the election commissioners is filed with the county auditor, who is the clerk of the board of county commissioners, and has the custody of its records. Said return is filed as a part of said proceeding before the board of commissioners. The board declares the result as determined by the majority of the legal votes cast at such election, and that declaration is entered in the record of said board as a part of the proceedings under said local option

law for an election. The record in which the declaration is entered is a public record. The board of commissioners is governed by the result of said election as declared by it and entered on its own records. Therefore said board must take judicial notice that it is unlawful for it to grant a license to any one in said territory, and that it has no jurisdiction to do so. *Rauch* v. *Commonwealth, supra,* 493, 494.

As the result of said election was against the sale of intoxicating liquors as a beverage, by the express provisions of the local option law it was made unlawful for the court below on appeal to grant any person license to sell intoxicating liquors in the city of Kokomo. The court below, therefore, had no jurisdiction to grant such license, and like the board of commissioners it was bound to take judicial notice thereof, and that it was made unlawful by said act for it to do so. The judgment of the court below granting license to appellee, being unlawful and without jurisdiction, was void.

Moreover, it is settled in this State that when a tribunal has no jurisdiction of a proceeding, the court to which the same is appealed has no jurisdiction thereof. *Jolly* v. *Ghering* (1872), 40 Ind. 139, 141; *Kiphart* v. *Brennemen* (1865), 25 Ind. 152; *Palmer* v. *Fuller* (1864), 22 Ind. 115; *Mays* v. *Dooley* (1877), 59 Ind. 287, 288; *Horton* v. *Sawyer* (1877), 59 Ind. 587; *Pritchard* v. *Bartholomew* (1873), 45 Ind. 219; *Millisor* v. *Wagner,* (1893), 133 Ind. 400, 403, 32 N. E. 927; *Wilcox* v. *Bryant* (1901), 156 Ind. 379, 382, 59 N. E. 1049; *Myers* v. *Gibson* (1899), 152 Ind. 500, 506, 53 N. E. 646; *Steinmetz* v. *G. H. Hammond Co.* (1906), 167 Ind. 153, 156, 78 N. E. 628, and cases cited.

It follows that the court below, instead of granting appellee license to sell intoxicating liquors as a beverage, should have dismissed his proceeding, on the ground that it had no jurisdiction to grant him such license, on account of the result of said local option election as declared by the board of commissioners. The court therefore erred in overruling appellant's motion for a new trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and to dismiss this proceeding for want of jurisdiction on account of the result of the local option election as declared by the Board of Commissioners of the County of Howard.

NOTE.—Reported in 98 N. E. 349. ' See, also, under (1) 11 Cyc. 405; (2) 23 Cyc. 138; (4) 26 Cyc. 173; (5) 11 Cyc. 389; (6) 1913 Cyc. Ann. 2539; (7) 23 Cyc. 102; (8) 36 Cyc. 1153; (10) 23 Cyc. 101; (11) 23 Cyc. 102; (12) 23 Cyc. 103; (13) 16 Cyc. 869; 23 Cyc. 91; (14) 2 Cyc. 537. As to when mandamus is the proper remedy against public officers, see 98 Am. St. 863. As to the facts of which courts will take judicial notice, see 124 Am. St. 20. Upon the control by mandamus of decision of licensing officer as to fitness of applicant, see 27 L. R. A. (N. S.) 1195. As to judicial notice of local option elections, see 18 Ann. Cas. 191.